**CABLEVISION SYSTEMS CORPORATION,**
Plaintiff,

v.

**45 MIDLAND ENTERPRISES, INC.**
**d/b/a J.B. Coughlans, Defendant.**

**No. 93 Civ. 2590 (VLB).**

United States District Court,
S.D. New York.

July 25, 1994.

William B. Jung, Law Offices of Daniel J. Lefkowitz, Jericho, NY, for plaintiff.

45 Midland Enterprises, c/o J.B. Coughlans, defendant pro se.

*MEMORANDUM ORDER*

VINCENT L. BRODERICK, District Judge.

I

No objections having been filed, the Report and Recommendation of United States

Magistrate Judge Mark D. Fox dated June 2, 1994, which is attached and incorporated into this decision, is approved and adopted.

As recommended in the Report and Recommendation at 6, plaintiff is awarded statutory damages of $2,800 plus reasonable attorney's fees and costs of $6,755 making a grand total of $6,755.

## II

There is always at least some risk of abuse or unintended hardship where legal fees awarded under a fee shifting statute exceed the amount at issue or recovered. See *Diamond D Enterprises v. Steinsvaag*, 979 F.2d 14 (2d Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993).

■ Should measures for collection of such fees risk forcing the defendant into bankruptcy, an application may be made to the court for a payment schedule pursuant to Fed.R.Civ.P. 69(a), which makes applicable New York Civil Practice Law & Rules § 5240, providing in part:

> The court may at any time, on its own initiative or on the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.

D. Siegel, Practice Commentary to § 5240, McKinney's Consolidated Laws 451 (1978), states that the statute authorizes the court to issue a " 'protective order' addressed to the facts of the particular case." A similar provision was adopted by Congress in the Federal Debt Collection Procedures Act of 1990 (28 U.S.C. § 3013) and is treated as reaffirming inherent equitable powers of the court in the legislative history at 136 Cong.Rec. H13289 (daily ed. Oct. 27, 1990) (statement of Rep. Jack Brooks, Chair of the House Judiciary Committee). The Government's section-by-section analysis of the same provision in the predecessor of the Act, quoted in *Schueler v. Rayjas Enterprises,* 847 F.Supp. 1147, 1164 (S.D.N.Y.1994), states in part:

> This section ... invokes the powers of the court as a court of equity to take whatever action may be necessary to protect the

rights of the [creditor], debtors, and third parties.

## III

The clerk is directed to enter judgment against defendant 45 Midland Enterprises, Inc. d/b/a/ J.B. Coughlans for $6,755. This case is closed.

**SO ORDERED.**

*REPORT AND RECOMMENDATION*

FOX, United States Magistrate Judge.

TO: THE HONORABLE VINCENT L. BRODERICK, U.S.D.J.

■ Plaintiff has a franchise to provide cable television in Port Chester. Defendant operates a tavern/restaurant, which intercepted the Home Box Office ("HBO") signals for the February 6, 1993 boxing match between Riddick Bowe and Michael Dokes without having paid the required fee. In your Honor's absence Judge Goettel granted Plaintiff's application for a default judgment and referred the matter for a report and recommendation on "the amount of damages which shall not exceed the amount of $110,-000.00 and reasonable attorneys fees, if any, pursuant to 47 USC § 605(e)(3)(B)(iii)...." A default judgment entered on well-pleaded allegations of a claim establishes a defendant's liability. The allegations are to be accepted as true, except those relating to the amount of damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). At a hearing held March 2, 1994, Defendant's principal, Robert W. Coughlan appeared. Unfortunately, as the result of a mechanical malfunction, a tape of those proceedings for transcription is not available; nevertheless, on the basis of my notes and my recollection of the witnesses, I have been able to render the following report and recommendation.

Derek Tudor, Plaintiff's security director, related the company's operations and explained that with the exception of private hotel rooms, HBO signals are not available to commercial customers with satellite dishes in Port Chester, *i.e.*, the defendant establish-

ment. The signals are only available to residential customers. Defendant subscribed to and was authorized to receive basic service, which did not include HBO signals. To authorize receipt of the HBO signal, Plaintiff provides a decoder box to the customer. The box unscrambles the signal. Tudor further related that a market exists for unscrambling devices, which are not authorized by Plaintiff and which will however permit reception of HBO signals, and explained that a subscriber to basic channels, who was displaying a premium channel such as HBO, was employing an unauthorized converter-decoder device to gain access to the premium channel.

Robert Weber, Plaintiff's audit investigator, visited Coughlan's on the evening of February 6, 1993. Fifty-six (56) individuals were present along with two (2) television sets. The televisions were displaying the introductions of the boxers to the Bowe–Dokes match, which was scheduled for live broadcast that evening. Weber noted that the sets were tuned to channel 6, which is the HBO channel in Port Chester. He also observed what he described as a cable television converter-decoder device near the television in the area of the bar. This device was not of the type and color which Plaintiff provided to authorized subscribers.

■ Proceeding *pro se*, the defendant has made a written submission in which he asks the Court to limit the relief to the injunction already granted, and if damages are awarded to the statutory minimum of $100 (47 U.S.C. § 553).[1] Much of this submission seems to be addressed to setting aside the default judgment. He has presented no reason for doing so, and quite frankly, his attitude toward this matter is flippant.

The evidence was sufficiently convincing to persuade me that Defendant violated the statute by unauthorized interception of a cable television signal on February 3, 1993.[2] Without an iota of evidence, Defendant speculates that Weber may have consumed alco-

holic beverages on the evening in question. He further asserts that the boxing match lasted less than a minute, which assertedly casts doubt on Weber's having been able to visit six (6) establishments in one evening. Weber testified that at the defendant establishment he had observed the broadcast/display of matters preliminary to the fight itself. Defendant also speculates that Weber may have viewed a completely different fight, despite the evidence that the set was tuned to channel 6, the HBO channel.

Writing for the Court in *International Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1003–1010 (2d Cir.1993) Judge Kearse has set forth an exhaustive treatment of the provisions of and interplay between 47 U.S.C. § 553 and § 605, both of which have been alleged to support jurisdiction herein. Plaintiff has elected to recover statutory damages, as opposed to actual damages, under § 605(e)(3). *See American Cablevision of Queens v. McGinn,* 817 F.Supp. 317, 320 (E.D.N.Y.1993); *Cablevision Systems Corp. v. Maxie's North Shore Deli Corp.,* No. CV 88–2834 (ASC) (E.D.N.Y. Mar. 20, 1991) (1991 Westlaw 1991 WL 58350 at *2) (1991 U.S.Dist.Lexis 4874); *Oceanic Cablevision, Inc. v. M.D. Electronics,* 771 F.Supp. 1019, 1025 (D.Neb.1991). In this case, the relevant provisions of § 605(e)(3) require the Court to award damages of not less than $1,000 nor more than $10,000 for each violation and "full costs", including reasonable attorney's fees. Additionally, if "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." 47 U.S.C. § 605(e)(3)(C)(ii). Alternatively, if "the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages

---

1. The statutory minimum, which is $250, is irrelevant in this case, because, as noted below, Plaintiff has elected statutory damages pursuant to a different provision.

2. As an aside, and for the benefit of the *pro se* defendant, I need not make this finding. Defendant is in default; liability is not at issue. Plaintiff presented evidence concerning the violation itself as that evidence may relate to an award of damages authorized by statute.

to a sum of not less than $250." 47 U.S.C. § 605(e)(3)(C)(iii).

The record contains little evidence concerning damages. Weber observed 56 persons in the tavern at the time, which number Defendant claims is his maximum legal capacity. He offered no documentary evidence on this point. Defendant further claims that the only television near the bar is a nineteen-inch (19") model; a twenty-inch (20") model is located in the dining area. From these facts, Defendant observes that his is not a sports bar with lots of large television screens, and apparently by inference, reasons that the size of his business should reduce the degree of the violation and/or diminish the amount of the damages.[3]

■ Unlike *Cablevision Systems Inc. v. Doudlesox, Inc.,* CV 89–0500 (DFJ) (E.D.N.Y. Aug. 24, 1989) (discussed in *Maxie's North Shore etc., supra,* 1991 Westlaw 58350 at *2 and text attached to the report and recommendation in *Primetime 24 Joint Venture v. Telecable Nacional,* Civ. Act. No. 90–1941, 1990 Westlaw 598572 (D.N.J. Oct. 10, 1990) (adopting order at 1990 Westlaw 598571, 1990 U.S. Dist.Lexis 19204 (D.N.J. Nov. 8, 1990)), Plaintiff has not submitted any evidence regarding the fee Defendant should have paid. In light of *Doudlesox,* in which Magistrate Judge Jordan awarded $30 per patron for a 1988 violation, I am persuaded that $50 per patron in 1993 is eminently reasonable. *Cf. Comcast Cablevision v. Allen,* 93–CV–1220 (E.D.Pa. Dec. 3, 1993) (1993 Westlaw 501599 at *2–*3) (1991 U.S.Dist.Lexis 17141). Accordingly, as I am not persuaded that Defendant's violation was

innocent, I respectfully recommend statutory damages in the sum of $2,800.

With respect to the award for costs, including reasonable attorney's fees, Plaintiff has submitted time sheets and billing statements, collectively Jung Aff. Exh. A, in support of a request for $3,600. I have examined these documents and have concluded that Plaintiff is entitled to: 28.25 hours at $100/hour ($2,825) for the time and effort of William B. Jung, Esq.[4]; 6.5 hours at $150/hour ($975) for the time and effort of Daniel J. Lefkowitz, Esq.; 3 hours at $65/hour ($195) for the time and effort of Wayne R. Louis; and disbursements of $155 (filing fee and service of process fee).

Based on the foregoing, I respectfully recommend that Plaintiff is entitled to damages totaling $6,755 against 45 Midland Enterprises, Inc. d/b/a J.B. Coughlans.[5]

### NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed.R.Civ.P. the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed.R.Civ.P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed.R.Civ.P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Vincent L. Broderick, at the United States Courthouse, 101 East Post Road, White Plains, New York, 10601, and to the chambers of the undersigned, at the said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order or judg-

---

**3.** The Court has not been impressed by Plaintiff's allegedly "smug" attitude regarding its attempt to "extort" a settlement from Defendant nor the fact that Plaintiff will realize more money from Defendant as an operating subscriber as compared to a bankrupt business. Simply put, Defendant violated a federal statute, was caught, and is subject to the civil remedies contained in that statute.

**4.** I have twice totaled the figures provided by Plaintiff and have concluded that while Plaintiff requests reimbursement for 26.25 hours for Jung, the documents disclose 28.25 hours.

**5.** Plaintiff also requests a permanent injunction against Defendant. Although I do not believe that this issue is the subject of your Honor's order of reference, the default judgment at 2 already contains a provision, "ORDERED that plaintiff is entitled to a permanent injunction against the defendant's unauthorized interception of plaintiff's telecommunication signals as prescribed under 47 U.S.C. sections 605(a) and 553(a)(1) and authorized under 47 U.S.C. sections § 605(e)(3)(B)(i) and 553(c)(2)(A) and demanded in plaintiff's Complaint; ...." For the Court's convenience, Plaintiff's counsel has submitted a proposed form of judgment.

**46**

ment that will be entered by Judge Broderick. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of H.H.S.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair, Ltd.,* 838 F.2d 55, 58 (2d Cir.1988). Requests for extensions of time to file objections must be made to Judge Broderick and should *not* be made to the undersigned.

Dated: June 2, 1994.