INTERNATIONAL CABLEVISION, INC.
d/b/a Adelphia Cable, Plaintiff,

v.

Marvin NOEL, Defendant.

No. 91–CV–0449C.

United States District Court,
W.D. New York.

Sept. 30, 1997.

LeBoeuf, Lamb, Green & MacRae, LLP (William G. Primps, Lorna M. McKenzie, of counsel), New York, NY and International Cablevision, Inc. (Randall D. Fisher, Athena Jamesson, of counsel), Coudersport, PA, for Plaintiff.

Brown & Kelly (Rodney O. Personius, of counsel), Buffalo, NY, for Defendant.

## DECISION and ORDER

CURTIN, District Judge.

### BACKGROUND

Plaintiff International Cablevision, Inc., d/b/a Adelphia Cable ("Cablevision"), brought this action against defendant Marvin Noel seeking damages and injunctive relief, claiming that Noel sold electronic devices designed to permit unauthorized interception and decoding of Cablevision's cable television programming signal, in violation of 47 U.S.C. §§ 553(a)(1) and 605(e)(4). For a thorough review of the factual background of this case, refer to *International Cablevision, Inc. v. Noel*, 859 F.Supp. 69 (W.D.N.Y.1994), *vacated sub nom, International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996) (Item 25). In brief, on April 9, and April 18, 1991, defendant sold pirate cable descrambler devices to two undercover Cablevision investigators. Unbeknownst to defendant, the investigators tape-recorded their conversation with him during the second sale. At each sale, defendant explained to the investigators how to attach the units to their existing cable and television connections, and stated that so long as they paid for Cablevision's basic service, they would be able to receive premium programming without having to pay for it. Cablevision tested the units and found that they could indeed descramble premium programming on a television receiving only the company's basic service. Defendant told the investigators to be careful about whom they talked to about the units, to hide them from

the cable company, and that these devices were "illegal."

Soon after defendant filed his answer to plaintiff's complaint, plaintiff filed a motion for summary judgment. Although defendant conceded that he violated 47 U.S.C. § 553, he filed a cross-motion to dismiss the § 605 claim. On August 1, 1994, this court granted defendant's motion to dismiss plaintiff's § 605 claim, granted plaintiff's summary judgment motion on the § 553 claim, and denied plaintiff's summary judgment motion on the § 605 claim. In considering whether the provisions of § 605(e)(4) applied to this case, this court ruled that the descramblers sold by defendant were not "primarily of assistance in the unauthorized decryption of satellite cable programming" within the meaning of § 605(e)(4). *Noel*, 859 F.Supp. at 77. The court also concluded that defendant had not violated § 605(a) by selling the two descramblers to Cablevision investigators. Concluding that only § 553 was applicable to defendant's conduct, this court awarded the minimum of $250 damages authorized by § 553(c)(3)(A)(ii) for defendant's violations, declining to apply the reduction to no less than $100 damages authorized by § 553(c)(3)(C) "where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of [§ 553]." *Id.* at 79. This court denied injunctive relief to plaintiff. *Id.* Plaintiff appealed this court's final order.

In *International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996), the Court of Appeals considered the consolidated appeal of Cablevision's action against Noel and Cablevision's appeal of its action against John Sykes, in which this court also dismissed plaintiff's claims under § 605, found defendant liable under § 553, and awarded statutory damages of $250 pur-

suant to § 553(c)(3)(A)(ii).[1] The Second Circuit reversed this court's finding that the conduct of defendants Noel and Sykes did not violate § 605, and remanded both cases for the imposition of damages under § 605(e), instead of the lesser damages under § 553, and for the mandatory award of attorneys' fees pursuant to § 605(e). *Id.* at 129. In reaching this conclusion, the Second Circuit considered whether the descramblers sold by Sykes and Noel were intended to be used to "receive any communication by radio" within the meaning of the third sentence of § 605(a). *Id.* The court held that in light of the legislative history and the uniform pre–1984 judicial interpretation of § 605 as applicable to the distribution of descramblers for the interception of cable television, § 605 continues to apply to such distribution, and therefore to the conduct of Sykes and Noel. *Id.* at 133. The court explicitly instructed that the more severe penalties provided by § 605(e)(3)(C)(i)(II) for violations of § 605(e)(4) apply in this case.[2] *Id.* In a footnote, the court acknowledged that not all programming distributed from the headend of a cable television originates as a radio communication. *Id.* at 131, n. 5. The court instructed that "if it could be proved in a particular case that the interception at issue, or the distribution of a descrambler for the purpose of such interception, would not involve any radio-originated communications, only § 553, and not § 605, would be violated in that case." *Id.*

On June 12, 1996, plaintiff moved for the enforcement of the Second Circuit's mandate (Item 34) seeking the imposition of the statutory damages authorized under § 605(e)(3)(C)(i)(II) and the award of reasonable attorneys' fees and costs. In support of its motion, plaintiff submitted a memorandum of law (Item 36) and several affidavits setting forth the attorneys' fees and costs it

---

1. Mr. Sykes also sold a descrambler device to a private investigator employed by Cablevision, and Cablevision brought a civil action to collect damages for this violation.

2. A violation of § 605(e)(4) occurs upon the distribution of a descrambler with knowledge (or reason to know) that the descrambler is primarily of assistance in the unauthorized decryption of

satellite cable programming, or is intended for any other activity prohibited by § 605(a). Thus, the act of distribution for either of the above purposes incurs the heavier penalties provided by § 605(e)(3)(C)(i)(II), while the subsequent act of interception (or assistance in interception) is a violation of the third sentence of § 605(a) and incurs the lesser penalties provided by § 605(e)(3)(C)(i)(II).

incurred in the prosecution of this case (Items 35, 37–39, 48). Defendant responded to plaintiff's arguments regarding the appropriate statutory damages and attorneys' fees in a memorandum of law (Item 44). He argues that the court should not award plaintiff the full $20,000 in statutory damages and that the court should limit the attorneys' fees and costs which plaintiff is entitled to recover.

On August 15, 1996, defendant filed a cross motion for a determination that § 605 is inapplicable to the facts of this case (Item 43). Defendant argues that the Second's Circuit's acknowledgment in footnote 5 that § 605 is not applicable in certain situations should be applied. He contends that the record fails to demonstrate that he intended or otherwise understood that the two scramblers sold by him in April 1991 would be used to intercept radio originated, as opposed to strictly wire communications; thus, this is one of the situations where § 605 does not apply (Items 43–44). Plaintiff responded to defendant's cross motion with a memorandum of law (Item 47).

The parties waived the opportunity to have oral argument on either of the pending motions and agreed to submit their motions on the papers.

## DISCUSSION

### I. *Defendant's Motion for a Determination that 47 U.S.C. § 605 is Inapplicable to this Case*

▆ Despite the Second Circuit's express finding that § 605 applies to defendant's conduct at issue in this action and that the more severe statutory penalties provided by § 605(e)(3)(C)(i)(II) apply, *Sykes,* 75 F.3d at 133, defendant urges this court to issue an order determining that § 605 does not apply. Defendant relies in part on the Second Circuit's statement in footnote 5. *See id.* at 131, n. 5. Defendant reads footnote 5 to suggest that § 605 only applies in cases where the defendant distributed a descrambler with the intent to intercept radio-originated communications. He argues that the record fails to demonstrate that he intended or otherwise understood that the two descramblers that he sold in April 1991 would be used to intercept radio-originated, as opposed to strictly

wire, communications (Item 43, ¶ 4; Item 44, p. 3). Defendant further contends that there is "absolutely no evidence in the record [demonstrating that] he understood [that] the descramblers would be used to intercept radio-originated communications." (Item 44, p. 3).

Defendant has misleadingly paraphrased the Second Circuit's discussion in footnote 5 and the surrounding text by inserting an intent requirement where none exists. The Second Circuit merely recognized that § 605 would not apply "if it could be proved in a particular case that the interception at issue, or the distribution of a descrambler for the purpose of such interception, *would not involve* any radio-originated communications." *Sykes,* 75 F.3d at 131, n. 5 (emphasis added). The court did not intend for footnote 5 to supply the rule for defendant's case since it had been conclusively demonstrated that plaintiff's "distribution of cable programming involves several types and stages of communication, including receipt of signals from satellite, transmission via radio, and retransmission over coaxial cable wiring." *International Cablevision v. Sykes,* 997 F.2d 998, 1009 (2d Cir.1993). The case was remanded for the sole purpose of the imposition of statutory damages and mandatory costs, including attorneys' fees. The court did not indicate or even suggest that there remain any open issues regarding the applicability of § 605.

### II. *Plaintiff's Motion for the Enforcement of the Second Circuit's Mandate*

#### A. *Statutory Damages*

As explained above, the Second Circuit held that § 605 applied to defendant's conduct, that defendant violated § 605(e)(4), and that the imposition of damages under § 605(e) instead of the lesser damages available under § 533 is appropriate. *Sykes,* 75 F.3d at 129 and 133. The court determined that because defendant acted with knowledge (or reason to know) that the descrambler is primarily of assistance in the unauthorized decryption of satellite cable programming, the more severe statutory penalties provided by § 605(e)(3)(C)(i)(II) for violations of § 605(e)(4) apply. *Id.* at 133. Under § 605(e)(3)(C)(i)(II), for each violation of

§ 605(e)(4), "an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff contends that these mandatory damages are designed to compensate the aggrieved party for its loss and to deter the defendant and others from future violations. *See Cablevision Systems New York City Corp. v. Faschitti,* 1996 WL 48689 (S.D.N.Y.). Plaintiff explains that Congress enacted the statutory damages provided under § 605(e)(3)(C)(i)(II) because of the difficulty in proving damages resulting from a § 605 violation. *Time Warner Cable v. U.S. Cable T.V., Inc.,* 920 F.Supp. 321, 329 (E.D.N.Y.1996). Plaintiff argues that statutory damages of at least $10,000 for each violation of § 605(e)(4) are necessary to ensure the "continued viability of the cable service industry" and to relieve cable subscribers from the burden of "subsidiz[ing] the costs of cable pirating." *Storer Cable Comm., Inc. v. Joe's Place Bar & Restaurant,* 819 F.Supp. 593, 596 (W.D.Ky.1993) (citing H.R. 4103, 98th Cong., 2d Sess. (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720).

▉ Plaintiff further contends that an award of $10,000 per violation does not fully compensate it for the harm caused by defendant's conduct, that the harm caused by the sale of pirate descramblers is immeasurable, and that its real loss is evidenced by the fact that "many non-subscribers may feel no need to subscribe to [Cablevision] when they can access [its] programming" by using decoding devices such as those sold by defendant. *Faschitti,* 1996 WL 48689, at *2.

▉ Defendant argues that this court should apply § 605(e)(3)(C)(iii), rather than § 605(e)(3)(C)(i)(II), finding that defendant was not aware that his acts constituted a violation of the statute (Item 44, pp. 5–6). He also argues that the court should base the damages award on a single violation of the statute, rather than two separate violations,

regardless of whether the court awards damages under § 605(e)(3)(C)(iii) or § 605(e)(3)(C)(i)(II) (*Id.,* pp. 6–7). Defendant contends that both of his violations occurred as a result of "sting" operations set up and initiated by plaintiff. Instead of filing suit after the initial violation, plaintiff opted to arrange another transaction. Defendant asserts that the damages provisions of the federal statute give this plaintiff, as well as other potential plaintiffs, the incentive to encourage multiple violations of the statute in order to recover greater damages. Defendant notes that the sales at issue were made to the same "customers" and occurred within a short period of time.

Although the court does not accept plaintiff's argument that $10,000 does not fully compensate Cablevision for the harm defendant has caused by the sale of the two descramblers,[3] the court concedes that the Second Circuit unambiguously directed this court to impose the more severe statutory penalties provided by § 605(e)(3)(C)(i)(II). It explicitly addressed the question of the extent of defendant's knowledge regarding the legality of his actions and concluded that § 605(e)(3)(C)(i)(II) was the appropriate damages provision. Defendant cannot relitigate this question.

In addition, although the court shares defendant's concern that the statutory damages provisions may provide cable companies with the incentive to set up multiple violations, there is no question that defendant violated the statute on two separate occasions. This court's decision on plaintiff's summary judgment motion and defendant's motion to dismiss assumed that there were two separate violations. Plaintiff has supplied the court with persuasive authority that the close temporal proximity of defendant's violations cannot support a conclusion that defendant may be charged with only a single violation of § 605. *See, Cablevision Sys. Corp. v. Muneyyirci,* 876 F.Supp. 415, 425 (E.D.N.Y. 1994) (awarding $10,000 in damages for each

---

**3.** The court is particularly troubled by the fact that these particular descramblers were never actually used to receive premium cable channels since they were purchased by investigators. Thus, the only actual damage plaintiff suffered

through these sales is the alleged market effect of such sales (e.g., deterring potential subscribers). The court finds it hard to believe that plaintiff suffers a loss in their sales of roughly $10,000 per descrambler.

of 390 violations of § 605 over a two-year period, for a total award of $3,900,000); *Primetime 24 Joint Venture v. Telecable Nacional,* 1990 WL 598571 (D.N.J.) (awarding statutory damages of $10,000 for each of 296 days that defendant illegally intercepted cable programming signal, for a total award of $2,960,000). The court empathizes with defendant's concern that the damages as provided by this subsection of the statute are disproportionate to the harm actually caused; however, the court cannot accept defendant's plea to create the legal fiction that these separate sales constitute a single violation of the statute.

Despite my concerns about the inequity of the damages provided under § 605(e)(3)(C)(i)(II) and defendant's limited financial resources, this court lacks the discretion to award a sum less than the minimum damages specified by that subsection. Congress has made its choice, and we must abide by the law as best we can. Consequently, the court awards plaintiff $20,000 pursuant to § 605(e)(3)(C)(i)(II), the mandatory minimum award permitted under that subsection.

## B. *Costs and Attorney's Fees*

In its remand order, the Circuit Court held that plaintiff is entitled to recover its costs, including attorneys' fees, in accordance with § 605(e)(3)(B)(iii). *Sykes,* 75 F.3d at 134. That subsection provides that "[t]he court shall direct the recovery of full costs, including awarding *reasonable* attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added). Pursuant to this mandate, plaintiff urges the court to direct defendant to compensate plaintiff

for its inside and outside counsel fees and expenses for the proceedings before the district court and the appeal, as well as its investigative fees and expenses (Item 36, p. 5). All told, plaintiff seeks to recover over $106,000 in costs and attorneys' fees (See Item 35, p. 7).[4]

Defendant objects to the total sum to which plaintiff claims it is entitled, raising numerous objections. Specifically, defendant argues that (1) the itemized expenses for the appeal, including printing and binding costs, are excessive and should be reduced; (2) the award should only include attorneys' fees incurred for the prosecution of the case before the district court; (3) the amount plaintiff paid its outside counsel for their work on appeal was unreasonable; (4) the hours claimed by plaintiff's in-house counsel are not supported by contemporaneous time records; and, (5) the fees plaintiff paid to investigators are excessive and are not supported by contemporaneous time records.

■ Defendant also raises two general objections to plaintiff's claim for costs and attorneys' fees. First, defendant contends that the court should not award attorneys' fees in excess of $20,000, arguing that the customary rule when awarding attorneys' fees is that the amount reasonably in controversy should be the ceiling on the fees that may be awarded. *Diamond D. Enterprises USA, Inc. v. Steinsvaag,* 979 F.2d 14, 19–20 (2d Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993). He urges the court to use $20,000 as a ceiling when conducting its reasonableness inquiry into plaintiff's request for costs and fees (Item 44, pp. 16–17).

---

4. Plaintiff has itemized its cost/fee request in the following manner:

 (1) $48,074.56 for attorneys' fees incurred for services rendered by LeBoeuf, Lamb, Greene & MacRae, L.L.P. ("LeBoeuf, Lamb") in connection with LeBoeuf, Lamb's representation of plaintiff's appeal of this case before the Second Circuit;

 (2) $3,977.90, half of the expenses plaintiff incurred in connection with LeBoeuf, Lamb's representation of plaintiffs appeal of the *Sykes* and *Noel* cases before the Second Circuit;

 (3) $9,550.00 for the value of the time expended by plaintiff's in-house counsel in litigating the appeal of this case;

 (4) $9,665.00 for the attorneys' fees and expenses paid by plaintiff to the law office of Daniel J. Lefkowitz for its prosecution of this case at trial;

 (5) $34,080.00 for the charges made by the law office of David J. Lefkowitz for prosecuting this matter on appeal;

 (6) $1,063.00 for the amount plaintiff paid for the investigations of defendant's violations of the law; and

 (7) Such further relief as the court deems proper and just.

(Item 35, ¶¶ 17(b)—17(h)).

Plaintiff claims that this argument is without merit since the rule recited by the court in *Steinsvaag* was announced in the context of a contractual fee shifting provision under New York law, and for that reason that case does not apply (Item 47, pp. 10–11). In addition, plaintiff notes that under § 605(e)(3)(C)(ii), it could have sought a statutory damages award of as much as $100,000 for each violation. Thus, by seeking only $20,000, it is requesting the minimum amount authorized by the statute. Plaintiff argues that it should not be prevented from recovering all of its costs merely because it has not chosen to pursue greater damages.

Although plaintiff is correct that *Steinsvaag* involved an attorneys' fee award under a contractual fee shifting provision, the rule announced by that court regarding reasonableness should not be limited to such a narrow context. This would not be the first court to turn to *Steinsvaag* for guidance in analyzing the reasonableness of attorneys' fees in the context of actions under 47 U.S.C. § 605. In *Cablevision Systems Corp. v. 45 Midland Enterprises, Inc.*, 858 F.Supp. 42, 43 (S.D.N.Y.1994), the court cited *Steinsvaag* and cautioned that there "is always at least some risk of abuse or unintended hardship where legal fees awarded under a fee shifting statute exceed the amount at issue or recovered." The court further explained that "[s]hould measures for collection of such fees risk forcing the defendant into bankruptcy, an application may be made to the court for a payment schedule pursuant to Fed.R.Civ.P. 69(a), which makes applicable New York Civil Practice Law & Rules § 5240." *Id.* Section 5240 provides in part: "[t]he court may at any time, on its own initiative or on the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

■ The *Steinsvaag* rule does apply, and therefore, the court will heed the Second Circuit's guidance in fashioning the appropriate fee award. Even though the Second Circuit has directed this court to award costs and attorneys' fees to plaintiff, the court will exercise its equitable powers to adjust the cost/fee awards so that they remain reasonable.

■ Second, defendant argues that the court should consider his limited financial circumstances and other obligations in determining the appropriate cost/fee awards (Item 44, pp. 24–26). He will not be able to pay the huge attorneys' fees plaintiff chose to pay to prosecute its case. He cites *Zimmerman v. Bishop Estate*, 25 F.3d 784 (9th Cir.), *cert. denied*, 513 U.S. 1043, 115 S.Ct. 637, 130 L.Ed.2d 543 (1994), for authority that a court may properly consider a party's limited financial circumstances when awarding attorneys' fees. Defendant argues that while plaintiff is a large corporation which can afford to pay large attorneys' fees, defendant is a retired federal employee who is not blessed with unlimited financial resources. He contends that while he takes responsibility for his actions in selling the two descramblers, his life should not be financially ruined for this relatively minor infraction. He further notes that § 605(e)(3)(B)(iii) explicitly provides for *reasonable* attorneys' fees, and asserts that it would be unreasonable for the court to require a retired janitor in Buffalo to pay for the services of a multinational law firm in New York City, as well as the efforts of four other attorneys (Item 44, pp. 25–26). Defendant notes that in *TCI of Illinois, Inc. v. Carpenter*, 849 F.Supp. 326, 328 (N.D.Ill.1994), the court limited its award of attorneys' fees so that they were "meaningful as a sanction in light of [the defendant's] modest circumstances without being punitive."

Defendant is approximately 68 years old, and his wife is 70 years old and deaf (Item 43, ¶ 17). He is now retired, and he and his wife exist on their pensions and Mrs. Noel's Social Security payments (*Id.*, ¶ 18). The Noels' assets are limited to their residence, a boat, and two motor vehicles (*Id.*, ¶ 19). It would be unreasonable to bankrupt defendant by forcing him to reimburse plaintiff fully for its expensive team of attorneys and investigators. Defendant is already facing a stiff penalty for his actions in the form of the mandatory statutory damages. The bill for costs and attorneys' fees is over five times larger than the damages awarded. Defen-

dant clearly does not have the resources to pay this large bill.

Following *Steinsvaag, Zimmerman,* and *Carpenter,* the best way to handle the present cost/fee application is to award a single lump sum of $20,000, rather than to rule separately on each component of the application. Nonetheless, the court will briefly discuss the merits of each of plaintiff's expenditures in order to identify particular problems with plaintiff's application and thereby demonstrate why the $20,000 fee award is reasonable.

### 1. *Plaintiff's Costs in Bringing its Appeal*

■ Plaintiff served an "Itemized and Verified Bill of Costs" ("Itemized Bill") upon counsel for defendant on February 9, 1996 (Item 44, pp. 8–9) and also filed it with the Court of Appeals on February 27, 1996, pursuant to Rule 39(c) of the Federal Rules of Appellate Procedure (*See* Item 47, Exhibit A). This bill specifies the costs incurred by plaintiff in docketing the appeal and providing the necessary documents to the court. The total costs claimed were $3,353.19, with defendant responsible for one-half of that amount. In Mr. Primps' affidavit accompanying plaintiff's pending motion for the enforcement of the Second Circuit's mandate (Item 35), plaintiff is now claiming that its total expenses for the appeal were $7,955.80, and plaintiff is seeking to have defendant pay for one-half of that amount, or $3,977.90 (Item 44, p. 8).

Plaintiff explains that the Itemized Bill and the $3,977.90 referenced in the Primps affidavit are separate costs, and thus both should be recovered (Item 47, p. 7). The Itemized Bill is a document plaintiff submitted to the Court of Appeals pursuant to Fed. R. App. P. 39(c) specifying the costs incurred in the appeal process of the action (Item 47, Exhibit A). Although plaintiff originally claimed that its costs came to $3,353.19, the Second Circuit adjusted the amount to $2,686.00.[5] Defendant would be responsible for one-half of this amount, or $1,343.[6] The costs specified in the Itemized Bill include (1) $100 for docketing the action for the appeal, (2) $1851.00 for printing the necessary copies of the appendix (once again, this figure includes the cost of binding and covers, and thus should actually be $1461); (3) $485 for printing the necessary copies of the brief; and (4) $250 for printing the necessary copies of the reply brief (*Id.*). The costs mentioned in the Primps affidavit include telephone calls, photocopying, and other out-of-pocket expenses regularly incurred by attorneys which are ordinarily charged to their clients (Item 47, pp. 7–8). Although plaintiff did not include the $1,343 from the Itemized Bill in its list of cost/fees it is currently seeking, reprinted above at footnote 5 (Item 35, ¶¶ 17(b)—17(h)), plaintiff is seeking to recover both sums (Item 47, pp. 7–8).

Not appreciating that plaintiff is seeking two separate types of costs, defendant has only challenged the costs included in the Itemized Bill. Defendant argues that plaintiff exceeded the maximum amount allowed in the Second Circuit for printing costs for their printing of the fifteen necessary copies of their appellant's brief, joint appendix, and reply brief. Defendant contends that pursuant to Local Rule 39, "[t]he cost of reproducing the necessary copies of appendices or record excerpts shall be taxed at a rate not to exceed $.20 per page ... or the actual cost, whichever shall be less" (Item 44, p. 8 (citing the Rule 39 of the Rules for the United States Court of Appeals for the Second Circuit)). Defendant notes that plaintiff paid roughly $.40 per page for copies of its

---

5. This adjustment takes into account Local Rule for the Second Circuit Court of Appeals 39, which instructs that printing costs for appendices cannot exceed $.20 per page. This court notes, however, that in reducing the amount recoverable for the printing of the appendix, the Second Circuit included $390.00 charged for binding and covers. This court assumes that this inclusion was an oversight by the Second Circuit since the specified printing costs for both the appellate brief and the reply brief do not include the cost of binding and covers. The Second Circuit should have reduced the amount recoverable for the printing costs of the appendix to $1,461.

6. Taking the proper adjustment into account, as explained in the preceding footnote, the total cost specified in the itemized bill should be $2,296, and defendant would be liable for $1,148.

appellate brief and reply brief and roughly $.29 per page for copies of its joint appendix (Item 44, p. 9). Defendant urges the court to limit plaintiffs recovery for all of these printing expenses to $.20 per page, for a total of $838.50.[7]

Although defendant is correct to bring Local Rule 39 to the court's attention, the rule is limited to the cost for copies of appendices and record excerpts. Fed. R. App. P. 39(c) instructs that the "court of appeals shall fix the maximum rate at which the cost of printing or otherwise producing necessary copies of briefs, appendices, and copies of records authorized by Rule 30(f) ... [and][s]uch rate shall not be higher than that generally charged for such work in the area where the clerk's office is located." The Second Circuit has not explicitly set a maximum dollar amount for the per page printing costs for briefs submitted in conjunction with an appeal as it has set for appendices. *See Furman v. Cirrito*, 782 F.2d 353, 356 (2d Cir., 1986) (distinguishing between the amount recoverable for the printing costs of appendices from the amount recoverable for the printing costs of appellate briefs). Plaintiff has failed to demonstrate that the approximately $.40 per page that it paid Counsel Press for printing the appellate brief and the reply brief is not higher than that generally charged for such services in Manhattan, the area where the clerk's office for the Second Circuit Court of Appeals is located. Having failed to meet its burden, the court finds that plaintiff would not be entitled to recover the full amount it seeks.

■ As for the $3,977.90 in costs referenced in Mr. Primps' affidavit, plaintiff correctly notes that it is entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *U.S. Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990). *See also Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir.

1987) (attorneys' fees include expenses that are incidental and necessary to the representation). Plaintiff attests that the $3,977.90 at issue included the cost of telephone calls, telex communication, photocopying, postage, on-line legal research, and other incidental costs. Plaintiff has provided supporting documentation that itemizes these costs (*See* Item 35, Exhibit B). The court does not find these costs to be unreasonable on their face; consequently, plaintiff would be entitled to recover the $3,977.90.

### 2. *Attorneys' Fees for Prosecution at Trial*

■ Plaintiff seeks to recover $9,665.00 for attorneys' fees and expenses it paid to the Law Office of Daniel J. Lefkowitz for its prosecution of this case at trial (Item 35, ¶ 17(e)). Although defendant concedes that the hourly rates charged by Mr. Lefkowitz are comparable to those normally charged in the Western District of New York, defendant argues that the court should not award the full amount requested by plaintiff for these services because the total number of hours Mr. Lefkowitz claims his office spent prosecuting this complaint is unreasonable (Item 44, pp. 11–12). Defendant contends that the total of 83.75 hours is excessive due to the relative simplicity of the matter, the fact that the Lefkowitz office specializes in cable theft prosecutions, and the fact that this case was resolved through summary judgment (*Id.*). Defendant notes that in *45 Midland Enterprises*, 858 F.Supp. at 45, which also involved a § 605 suit, the Law Office of Daniel Lefkowitz was only awarded attorneys' fees for 28.25 hours, for a total of $3,995. That case was decided through a default judgment in favor of the plaintiff rather than summary judgment; nevertheless, defendant contends that this difference does not justify a fee increase of over 150 percent. (Item 44, p. 13).

In his reply (Item 48), Mr. Lefkowitz attests that he and his associate rendered services in this case on a regular basis from July

---

**7.** This figure includes $72.00 for one-half of the cost for the appellate brief (15 copies of 48 pages, a total of 720 pages), $36.00 for one-half of the cost for the reply brief (15 copies of 24 pages, a total of 360 pages), and $ 730.50 for one-half of the cost for the joint appendix (15 copies of 487 pages, a total of 7,305 pages).

1991 through September 1993, and that these services were not limited to prosecuting the single summary judgment motion (*Id.*, ¶ 3). He had to respond to (1) defendant's discovery requests, (2) defendant's cross-motion to stay the entire action, (3) defendant's cross-motion to dismiss plaintiff's claims under 47 U.S.C. § 605, and (4) this court's order directing plaintiff to address the issues raised by the Second Circuit's order remanding the *Sykes* case. Mr. Lefkowitz avows that the time spent by his firm in litigation at the district court level was not duplicative or any more necessary than was required for the issues at hand (*Id.*, ¶ 7). He contends that his firm's expertise in actions under 47 U.S.C. §§ 553 and 605 actually reduced the amount of time which would have otherwise been chargeable to plaintiff by other trial counsel unfamiliar with such issues (*Id.*, ¶ 10).

Defendant's comparison of the number of hours spent in the present case with those in *45 Midland Enterprises* is flawed. The latter case did not involve the five conferences, the stay motion, the cross-motions, the discovery, and the briefing over the applicability of § 605 which were all required before an appealable judgment was rendered in the present case (Item 48, ¶ 9). *45 Midland Enterprises* merely involved the drafting and filing of a complaint and conducting an inquest following entry of a default judgment, all without opposition (*Id.*). Despite the relative expertise of Mr. Lefkowitz and his associates in the area of cable theft prosecutions, the present case has involved complex questions of statutory interpretation. As evidenced by the disagreement between this court and the Second Circuit, reasonable minds can differ on the issue of what conduct triggers 47 U.S.C. § 605. Despite the lack of a complex fact dispute, the prosecution of this case, particularly in light of the Second Circuit's remand of the *Sykes* case, involved unresolved questions of law. Thus, the court does not find that the hours spent by the Lefkowitz firm in the prosecution of this case were excessive.

### 3. *Attorneys Fees Appellate Work*

The majority of the attorneys' fees for which plaintiff is seeking recovery were incurred for services rendered in conjunction with representation of plaintiff's combined appeal of *Noel* and *Sykes*. Specifically, plaintiff is asking the court to award it (1) $48,074.56 for the fees incurred for services rendered by LeBoeuf, Lamb; (2) $9,550.00 for the value of the time expended by its in-house counsel; and (3) $34,080.00 for the fees incurred for the services rendered by the Law Office of Daniel J. Lefkowitz (Item 35, ¶¶ 17(b), 17(d), 17(f)). All told, plaintiff is seeking an award of $91,704.56 for attorneys' fees incurred for appellate work.

 Defendant argues that plaintiff should not be reimbursed for legal fees incurred on appeal, contending that a normal award of appellate costs does not include attorneys' fees and that plaintiff must derive authority for the recovery of counsel fees on appeal under the terms of 47 U.S.C. § 605, even though the statute and the legislative history are silent on this point (Item 44, pp. 14–16). He cites cases from other circuits for the propositions that " 'a prevailing party' is not automatically entitled to an award of appeal-related attorneys' fees," and that the court has discretion in deciding "whether to award appeal-related attorneys' fees." *Hoyt v. Robson Companies, Inc.*, 11 F.3d 983, 985 (10th Cir.1993); *See also Lander v. Morton*, 518 F.2d 1084, 1088 (D.C.Cir.1975).

Defendant also argues that he should not be subjected to more severe liability for attorneys' fees merely because the Court of Appeals and the District Court did not agree on the question of whether § 605 applied to his conduct (Item 44, pp. 15–16). Defendant notes that plaintiff's claimed fees for prosecuting this case before the District Court are less than $10,000, while plaintiff's claimed fees for the appeal are in excess of $90,000. Defendant relies on *Weitzman v. Stein*, 891 F.Supp. 927, 935 (S.D.N.Y.1995), *rev'd in part*, 98 F.3d 717 (2d Cir.1996), in which the district court found it inappropriate to award attorneys' fees for an appeal because appeal costs were not caused by the defendant's wrongful conduct.[8] Defendant asserts that if

---

**8.** On appeal, the Second Circuit reversed the District Court's holding denying costs and attor-

the District Court had initially found defendant liable under § 605, then defendant would not be facing these additional legal fees. He contends that there is no reason to believe that Congress intended to punish a defendant more severely when a District Court is reversed by a Court of Appeals on a question of law that has not been addressed previously (Item 44, p. 16).

Plaintiff claims that many courts have expressly held that an award of "full costs" includes attorneys' fees and expenses incurred in a successful appeal (Item 47, p. 9). In *Perkins v. Standard Oil Co.,* 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970), the Supreme Court held that the Clayton Act's provision for attorneys' fees includes fees for appellate legal services rendered in a privately prosecuted antitrust action. *Id.* at 223, 90 S.Ct. at 1990. In *Williams v. Alioto,* 625 F.2d 845, 849–50 (9th Cir.1980), *cert. denied,* 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981), the Ninth Circuit found that the prevailing party in a civil rights action was entitled to reasonable attorneys' fees for services rendered in conjunction with the appeal. In *Montalvo v. Tower Life Building,* 426 F.2d 1135, 1150 (5th Cir.1970), the Fifth Circuit instructed that the district court should award an additional fee for the appeal, since "[a] mastery of the issues raised by the defendants obviously required considerable study and research on the part of plaintiff's attorneys."

Plaintiff correctly distinguishes *Lander* from this case, since in *Lander* there was no basis for awarding expenses relating to plaintiff's appeal since the appellate court's decision was not in favor of the plaintiff, but instead affirmed the district court's finding that the defendant was not in contempt of court. In *Lander,* the losing party's conduct was not in violation of a statute that expressly provided for mandatory attorneys' fees, such as the statute in this case (Item 47, p. 10).

■ Furthermore, the Second Circuit reversed the district court's refusal to award attorneys' fees incurred on appeal in *Weitz-*

*man,* explaining that "[i]n order to avoid extending this already prolonged litigation, [it was] also direct[ing] the district court to grant fees and costs for this second successful appeal." 98 F.3d at 721. This precedent strongly suggests that the Second Circuit views its own mandate to award attorneys' fees to include those fees incurred on appeal. The court concludes that plaintiff is entitled to seek compensation for attorneys' fees incurred in its appeal, and that this court has the jurisdiction to include these fees in its total fee award.

■ Defendant has challenged the reasonableness of plaintiff's request for attorneys' fees incurred on appeal raising several objections. Specifically, defendant argues that the number of hours spent by plaintiff's attorneys, including its in-house counsel and both outside firms, was unreasonable and duplicative (Item 44, pp. 17–21). Defendant notes that plaintiff claims that its eleven attorneys, three paralegals, and eleven law clerks spent a total of 1,012.75 hours working on the appeal. In addition, defendant contends that plaintiff should not be reimbursed for the hours claimed by its in-house counsel because they are not supported by contemporaneous time records (*Id.,* pp. 21–22). Finally, defendant argues that the rate charged by LeBoeuf, Lamb for the work of its paralegals and law clerks was unreasonable, and therefore, the court should reduce the amount recoverable for such work (*Id.,* pp. 24–26).

The court has carefully considered both sides' arguments regarding the general reasonableness of awarding plaintiff the full amount of attorneys' fees as well as the objections to specific aspects of the fee request. The court finds that plaintiff is not entitled to the full amount of fees it has requested. Defendant should not be penalized by a sum of over $90,000 just because this court and the Second Circuit disagreed over the proper interpretation and application of § 605. In its order remanding the present case for the imposition of statutory damages and reasonable attorneys' fees, the

neys' fees from the appeal. This reversal occurred after the parties had submitted their

briefs on this motion.

Second Circuit expressly stated that this court's reading of § 605 and its legislative history was plausible, but that it chose to read the statute and its history differently. *Sykes*, 75 F.3d at 131. Defendant had the misfortune of having his case serve as the test case for this complex statute. Considering the unsettled state of the law both at the time this case was brought against defendant and at the time plaintiff appealed this court's initial determination, it is difficult to criticize defendant for defending his position on appeal. Thus, in determining what constitutes a reasonable award of attorneys' fees, this court cannot ignore the inherent unfairness in forcing defendant to pay an additional $90,000 simply because the statute was not clear.

Although plaintiff had to incur substantial additional expenses in order to prevail on this claim before the Second Circuit, it stands to gain considerably from that favorable ruling. Not only is plaintiff entitled to far greater statutory damages in this specific case due to the Second Circuit's ruling ($20,000 as opposed to $250), now that the Second Circuit has specified the conduct which triggers § 605, plaintiff can look forward to large damage awards in future prosecutions brought under this statute.

The court will not engage in a detailed analysis of the reasonableness of the time spent by each of plaintiff's separate teams of attorneys and support staff. The court believes that its obligation to award "reasonable attorneys' fees" suggests a broader view of reasonableness. As explained above, the court must take into account defendant's age, his limited financial resources, and his family circumstances in evaluating what constitutes a reasonable award of attorneys' fees. Defendant is already facing a stiff penalty for his misconduct in the form of the mandatory statutory damages. The total bill for costs and attorneys' fees is over five times the size of the damages award. If the court were to award the full fee request, defendant would certainly face financial ruin. As it is, the more limited award will be a severe blow to defendant. The court fails to see how the award of a large amount for attorneys' fees could be reasonable. Plaintiff has not demonstrated that the significant amount of time and money that it devoted to the appeal of this case was necessary for plaintiff's ultimate success. The court does not believe that it was the intent of Congress to bring financial ruin to persons like this defendant.

▮ Finally, because plaintiff has not provided contemporaneous time records of the work performed by its in-house counsel, it would not be entitled to recover the fees it seeks for their work.

### 4. *Investigative Fees*

▮ Plaintiff is also seeking to recover $1,063.00 for the amount it paid for the investigation of defendant's violations of law (Item 35, ¶ 17(g)). Plaintiff argues that the legislative history of the Cable Communications Policy Act confirms that a court's "power to direct the recovery of all costs under § 605(e)(3)(B)(iii) shall include reasonable investigative fees (related to the action) of an aggrieved party" (Item 36, pp. 8–9). 130 Cong. Rec. § 14288 (daily ed. Oct. 4, 1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4750; *See also Time Warner Cable*, 920 F.Supp. at 332–33 (plaintiff's payment of a $4,500 fee to an informant was a cost of plaintiff's investigation and recoverable under § 605(e)(3)(B)(iii)). In conjunction with its request for investigative expenses, plaintiff supplied an affidavit by Darlene Lake, the chief security representative in plaintiff's investigation and prosecution against defendant (Item 38). Ms. Lake was responsible for authorizing investigative operations of defendant's activities in selling pirate television decoders and for plaintiff's payment of such services by private investigators. She attests that a breakdown of the investigative services and related expenditures in this case includes: (1) $70.00 for meetings on April 16, 1991, between plaintiff's private investigators and plaintiff's personnel regarding the investigation of defendant and the purchase of pirate descramblers; (2) $70.00 for the preparation of the investigation of defendant on April 17, 1991; and (3) $923.60 for setting up the investigation and surveillance for the purchase of the descramblers from defendant on April 18, 1991 (*Id.*, ¶ 3). Plaintiff has already paid the $1,063.60 in full.

▮ Defendant correctly notes that plaintiff has failed to supply contemporaneous time records to substantiate the fee request

for this service. The Lake affidavit fails to document (1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; or (3) why the investigators are qualified to demand the requested rate. This court believes that a request for investigative fees pursuant to § 605(e)(3)(B)(iii) should be subject to the same level of scrutiny to which requests for attorneys' fees are subjected. There is no reason to allow a prevailing party to recover expenses it has incurred for investigative work without having to describe the precise services performed, the time spent, the rate per hour charged for the services, and the standard charge for such services in the district. Plaintiff cannot avoid its responsibility to explain how the bill for such services was computed by arguing that defendant has failed to provide the court with any authority for extending the contemporaneous time records requirement to investigative services. The legislative history for § 605(e) instructs that the court has the power to direct the recovery of investigative fees, not that the court is required to order such an award.

Thus, because plaintiff has failed to supply contemporaneous time records for its investigative fees, the court declines to allow plaintiff to recover these expenses.

### CONCLUSION

For the foregoing reasons, this court denies defendant's motion for a determination that 47 U.S.C. § 605 is inapplicable to the present case (Item 43) and grants plaintiff's motion for enforcement of the Second Circuit's mandate (Item 34). The court awards plaintiff $20,000.00 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), and $20,000.00 for attorneys' fees and costs.[9]

So ordered.

---

**9.** The court finds this to be a very disturbing result. Although there is no doubt that defendant sold the descramblers and thereby violated federal law, it has never been alleged or proven that defendant was involved in anything more substantial than a simple hand-to-mouth operation. The situation would be very different if the defendant was engaged in a more widespread and systematic operation of cable theft, either by himself or as part of an organization or entity. The penalty seems to be drastically disproportionate to the injury suffered by plaintiff. It is hard to believe that this is the type of situation that Congress had had in mind when it drafted the harsh statutory penalties of section 605.