**DIRECTV, INC., Plaintiff,**

v.

**Tolbert P. ADKINS, et al., Defendants.**

No. 1:03 CV 00064.

United States District Court,
W.D. Virginia,
Abingdon Division.

June 9, 2004.

John H. Jamnback, Yarmuth Wilsdon Calfo PLLC, Seattle, Washington, and Benjamin J. Lambiotte, Garvey Schubert Barer, Washington, D.C., for Plaintiff.

Carl E. McAfee, McAfee Law Firm, P.C., Norton, Virginia, for Defendants Tolbert P. Adkins, Darrell Coleman, Elwood Dykes, and Rex Rife.

## OPINION

JONES, Chief Judge.

The sole question before me is the appropriate relief to be awarded to DI-RECTV for its successful claim against some of the defendants for the unlawful distribution of electronic devices designed to steal satellite television programming, in violation of the Federal Communications Act. After consideration of the parties' arguments, I grant the plaintiff's requests for statutory damages and injunctive relief against each of these defendants.

### I

Plaintiff DIRECTV operates a television satellite broadcast system. This lawsuit is one of a number of similar suits it has filed against individuals who purchased and redistributed black market electronic devices that allow end users to circumvent DIRECTV's encryption measures and access satellite programming without paying for it.

The issues presently before me relate to defendants Tolbert Adkins, Darrell Coleman, Elwood Dykes, and Rex Rife. DIRECTV alleged that these defendants purchased 205, 15, 20, and 82 bootloaders,[1] respectively, from Mountain Electronics, an Arizona internet retailer, and sold or redistributed them.[2] During discovery, each of these defendants invoked his Fifth Amendment right against self-incrimination and declined to respond to any requests for admission, interrogatories, or deposition questions relating to any activities of purchasing or distributing signal theft devices. DIRECTV moved for summary judgment on its § 605(e)(4) claims, submitting that, in the absence of the defendants' ability to provide an alternate

---

**1.** Bootloaders are devices that allow unauthorized access to DIRECTV programming by enabling illegally modified access cards.

**2.** The initial complaint alleged causes of action arising under the Federal Communications Act, 47 U.S.C.A. §§ 605(a), 605(e) (West 2001); the Digital Millennium Copyright Act, 17 U.S.C.A. §§ 1201(a)(2), 1201(b)(1) (West 1996 & Supp.2004); the Electronic Communications Privacy Act, 18 U.S.C.A. §§ 2511(1)(a), 2512(1)(b) (West 2000); unjust enrichment; tortious interference; and unfair competition. All the claims against defendants Adkins, Coleman, Dykes, and Rife, except for the one arising under 47 U.S.C.A. § 605(e)(4), have now been dismissed.

explanation for what happened to these devices after purchase, the significant number of bootloaders purchased permitted a reasonable inference that the defendants sold or redistributed them to end users. DIRECTV substantiated its assertion with undisputed evidence that the only "commercially significant" use for bootloaders is to skirt DIRECTV's programming encryption and that only one such device is required to re-enable a disabled DIRECTV access card and receiver/decoder unit. I granted DIRECTV's motions on the merits, and entered summary judgment in its favor on this cause of action. *See DIRECTV, Inc. v. Adkins,* 311 F.Supp.2d 544, 549 (W.D.Va.2004). The remaining causes of action against these four defendants were dismissed.

DIRECTV requested relief under §§ 605(e)(3) and (e)(4) in the form of permanent injunctions, statutory damages, costs, and attorneys' fees, but I reserved judgment on these requests. The defendants were provided an opportunity to file objections to the requests. Each of them has filed a brief opposing DIRECTV's requests for statutory damages, and the issues are now ripe for decision.

## II

Any party bringing a successful civil claim under § 605 of the Communications Act is entitled to injunctive relief, monetary damages, and a full recovery of its costs. *See* 47 U.S.C.A. § 605(e)(3)(B). Whereas the grant of injunctive and monetary relief lies within the court's discretion, an award of costs, including reasonable attorneys' fees, is mandatory. *Compare id.* § 605(e)(3)(B)(i), *with id.* § 605(e)(3)(B)(ii) and (iii); *see also DIRECTV, Inc. v. Huynh,* No. 1:03cv0826–T, 2004 WL 1123830, at *5 (M.D.Ala. May 19, 2004).

In determining whether to award monetary damages, I am to consider "both the nature of the violation in light of the statutory scheme involved, as well as the particular circumstances concerning the defendant's actions." *Nat'l Satellite Sports, Inc. v. Garcia,* No. Civ.A. 301CV1799D, 2003 WL 21448375, at *2 (N.D.Tex. June 18, 2003) (internal citations omitted). Considering the number of bootloaders distributed by each of the defendants and Congress' evident purpose in the statute's language to prohibit black market distribution of unlawful decryption devices, an award of damages is appropriate. *See* 47 U.S.C.A. § 605(e)(4).

■ A party prevailing under § 605 may elect to recover either the actual damages suffered or statutory damages. *Id.* § 605(e)(3)(C)(i). DIRECTV has requested statutory damages, which, for violations of § 605(e)(4), are prescribed to be "a sum not less than $10,000, or more than $100,000, as the court considers just[,]" for each violation. *Id.* § 605(e)(3)(C)(i)(II). The statute also allows for enhanced damages for "violation[s] committed willfully and for purposes of direct or indirect commercial advantage or private financial gain...." *Id.* § 605(e)(3)(C)(ii). Conversely, where "the violator was not aware and had no reason to believe that his acts constituted a violation" of this statute, an award of damages may be reduced "to a sum of not less than $250." *Id.* § 605(e)(3)(C)(iii).

DIRECTV has set its request at the lower end of the statutory damages range, requesting an award of $10,000 per violation against each defendant. Because the statute deems the selling or distributing of each device to be a separate violation, *id.* § 605(e)(4), DIRECTV's request would amount to awards of $2,050,000 against defendant Adkins, $150,000 against defendant Coleman, $200,000 against defendant Dykes, and $820,000 against defendant Rife. Although I appreciate the defen-

dants' assertion that awards of this size would almost "certainly bring financial ruin to most individuals living in Southwest Virginia[,]" (Mem. Opp'n to Stat. Damages 4) I am constrained by Congress' establishment of a minimum floor for statutory damages under this provision and by its intent to punish distributors of unauthorized decryption devices significantly more harshly than end users. *See Int'l Cablevision, Inc. v. Noel,* 982 F.Supp. 904, 911 (W.D.N.Y.1997). I will thus grant DIRECTV's request for monetary damages and award $10,000 per device against each defendant.

■ The defendants in their memoranda in opposition to DIRECTV's requests submit that the award of monetary damages should be reduced to $250, pursuant to § 605(e)(3)(C)(iii), because DIRECTV has not produced conclusive evidence to show that the defendants knew their actions were in violation of § 605(e)(4). This contention is not well-founded, as the burden lies on the defendants to show that they had no reason to believe that their conduct was unlawful, not on DIRECTV to show the contrary. *See Don King Productions/Kingvision v. Lovato,* No. C–95–2827 (THE), 1996 WL 682006, at *2 (N.D.Cal. Nov.15, 1996). Because the defendants have exercised their Fifth Amendment right against self-incrimination, they have provided no evidence to shed any light on their awareness or lack thereof as to the illegality of their conduct. DIRECTV, in contrast, has submitted evidence of a strongly-worded disclaimer on the Mountain Electronics website from which the defendants purchased the signal theft devices presently at issue. The disclaimer warned any users of the website that distribution of signal theft devices in the United States was unlawful, and every user was required to acknowledge the disclaimer in order to proceed further into the website. (Rissler Dec. Ex. A1.) The defendants have also produced no evidence permitting a reasonable inference that they did not see this disclaimer or that the purchases from Mountain Electronics were made by modes other than through its website. The evidence as a whole does not show that the defendants violated § 605(e)(4) without knowing that their conduct was unlawful, and a reduction of damages is therefore not appropriate.

DIRECTV's request for a permanent injunction will also be granted, and the defendants, and persons or entities controlled directly or indirectly by them, or each of them, will be permanently enjoined from designing, developing, manufacturing, assembling, modifying, importing, exporting, possessing, trafficking, distributing, or selling illegal satellite signal theft devices; assisting, procuring, aiding, and abetting third persons in the unauthorized reception and use of DIRECTV's television programming; placing advertisements for the sale of illegal satellite signal theft devices; or providing software, information, and technical support services therefore.

### III

For the foregoing reasons, plaintiff DIRECTV's requests for statutory damages and injunctive relief against defendants Adkins, Coleman, Dykes, and Rife are granted.