**TCI OF ILLINOIS, INC., Plaintiff,**

**v.**

**Dan CARPENTER, individually etc., Defendant.**

**No. 93 C 4694.**

United States District Court, N.D. Illinois, Eastern Division.

April 8, 1994.

Stuart D. Gordon of Zukowski, Rogers, Flood & McArdle, Chicago, IL, for plaintiff.

Mark W. Rigazio of Rigazio & Bertani, Morris, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

TCI of Illinois, Inc. ("TCI") prevailed in this action against Dan Carpenter ("Carpenter"), individually and d/b/a Liberty Street Bar—an action based on a small tavern's unlawful exhibition of a cable-televised heavyweight championship fight—to a much lesser extent than TCI had hoped: After a bench trial it recovered neither its proposed ad damnum of $100,000 or anything even approaching that,[1] but rather the comparative pittance of $420 in damages. Now TCI moves for an award of its "reasonable attorneys' fees" under 47 U.S.C. §§ 553(c)(2)(C) and 605(e)(3)(B)(iii), claiming that the compensable services by TCI's two law firms aggregate $13,600.56 (plus taxable costs of $188.35).

■ *Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) came as a shock to the legal and judicial communities involved in the awarding or shifting of legal fees. What had been viewed as a maverick

---

1. Indeed, TCI's Complaint had also sought an accounting of Carpenter's profits and punitive damages under Illinois law. Neither of those remedies was appropriate in light of the comparatively de minimis nature (in purely financial terms) of the violation of TCI's rights—though this Court does not minimize the infringement by Carpenter.

decision by the Court of Appeals for the Fifth Circuit, at odds with the uniform pattern of decisions elsewhere, became the law of the land. TCI seeks to cabin *Farrar* in two respects, urging that (unlike this case) the decision (1) treated with a truly nominal damages award of $1 and (2) was a civil rights case applying 42 U.S.C. § 1988. But neither of those aspects of *Farrar* renders what was said and done in that case of no moment here:

1. Although $420 may not be "nominal damages" in the absolute sense of a token award, it is certainly nominal in relation to the financial sights that TCI had set for the parties and this Court in bringing this action.

2. There has never been a hint in the jurisprudence of the Supreme Court or of our Court of Appeals (or of any other court, to this Court's knowledge) that the determination of "reasonable fees" differs from statute to statute, or for that matter from the setting of reasonable fees under a contractual provision or any other exception to the American Rule (such as under Fed.R.Civ.P. 11, or via fee-shifting pursuant to a court's inherent power).

Hence *Farrar*'s statement of principles bears importantly on the decision here, as the later discussion will reflect.

But before addressing that subject, this opinion pauses to identify several problems with TCI's fee petition as such. For one thing, it reflects substantial duplication of activity—such things as numerous interlawyer conferences and the review of one lawyer's work by various others.[2] For another, the amount of time spent appears entirely unjustified: For example, the expenditure by the Washington firm alone of nearly 29 hours to draft a complaint, and the same firm's consumption of more than 30 hours in the course of its efforts in support of a default judgment and summary judgment, are way out of line with this Court's own experience with comparable tasks while engaged in the practice of law. And finally, the Washington firm's monthly summarization of each lawyer's time rather than the entry-by-entry compilation that was properly submitted by TCI's local counsel makes judicial evaluation much more difficult if not impossible.[3]

■ In this instance the teaching of *Farrar*, to which this opinion now returns, is that this Court may properly avoid the entry-by-entry parsing of the fee petition in terms of reasonable hours spent multiplied by reasonable hourly rate. As already indicated, both what *Farrar* says and what it draws from prior law (particularly *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) are principles of importance to this case. Here is a lengthy but highly relevant quotation from *Farrar*, —— U.S. at ——––——, 113 S.Ct. at 574–75, after the Supreme Court held that even the award of nominal damages rendered plaintiff a "prevailing party":

Although the "technical" nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988. Once civil rights litigation materially alters the legal relationship between the parties, "the degree of the plaintiff's overall success goes to the reasonableness" of a fee award under *Hensley v. Eckerhart*, 461 U.S. 424 [103 S.Ct. 1933, 76 L.Ed.2d 40] (1983) [*Texas State Teachers Ass'n v. Garland Independent Sch. Dist.*], 489 U.S. [782], 793 [109 S.Ct. 1486, 1494, 103 L.Ed.2d 866] [(1989)]. Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley, supra,* 461 U.S., at 436 [103 S.Ct. at 1941]. Accord, *Marek v. Chesny*, 473 U.S. 1, 11 [105 S.Ct. 3012,

2. Both because of its impact on those items and independently, there is certainly no reason that the losing party should have to pay for the fact that the control of this Illinois-based lawsuit was in the hands of Washington D.C. counsel, substantially increasing the extent of the duplication of work.

3. It is always hard (or as the text suggests, it may well be impossible) for a court to scrutinize lawyers' time from the outside and in hindsight. Add to that the fact that poring over such entries is surely the least productive allocation of scarce judicial resources, and there is little wonder that the collateral business of awarding fees ranks low on the judges' popularity scale.

3017–18, 87 L.Ed.2d 1] (1985). In this case, petitioners received nominal damages instead of the $17 million in compensatory damages that they sought. This litigation accomplished little beyond giving petitioners "the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated" in some unspecified way. *Hewitt* [*v. Helms*], 482 U.S. [755], 762 [107 S.Ct. 2672, 2676–77, 96 L.Ed.2d 654] [ (1987) ]. We have already observed that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley, supra,* 461 U.S., at 436 [103 S.Ct. at 1941]. Yet the District Court calculated petitioners' fee award in precisely this fashion, without engaging in any measured exercise of discretion. "Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Riverside v. Rivera,* 477 U.S. 561, 585 [106 S.Ct. 2686, 2700, 91 L.Ed.2d 466] (1986) (Powell, J., concurring in judgment). Such a comparison promotes the court's "central" responsibility to "make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron,* 489 U.S. 87, 96 [109 S.Ct. 939, 946, 103 L.Ed.2d 67] (1989). Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, see *Hensley,* 461 U.S., at 430, n. 3 [103 S.Ct. at 1938, n. 3], or multiplying "the number of hours reasonable expended . . . by a reasonable hourly rate," *id.,* at 433 [103 S.Ct. at 1939].

That extended statement as to fees properly awardable for nominal success in a civil rights action has equal force in the context of a $420 damage award in a case such as this,[4]

4. As from time to time in the past, this Court is reminded of Horace's *Ars Poetica,* line 168— "Parturient montes, nascetur ridiculus mus"— sometimes translated as (*Bartlett's Familiar Quotations* 41 (13th (centennial) ed. 1955)):

except that a no-fee award would be inappropriate. Both because of the specific problems of overstatement in TCI's fee petition and in faithfulness to *Farrar,* the proper award here is one of "low fees" rather than a mechanical application of the lodestar approach. Although any specific figure to represent such "low fees" may be open to debate because it necessarily partakes of some subjective evaluation, what appears appropriate is a trebling of the damages award—meaningful as a sanction in light of Carpenter's modest circumstances without being punitive. Carpenter is ordered to pay to TCI the sum of $1,260 in fees and $188.35 in taxable costs, or a total of $1,448.35.

The lab'ring mountain scarce brings forth a mouse.