**Darryl SIMPSON, Plaintiff–Appellee, Cross–Appellant,**

v.

**Michael SHEAHAN, Sheriff of Cook County, Defendant–Appellant, Cross–Appellee.**

Nos. 96–1422, 96–1498.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 1996.

Decided Jan. 17, 1997.

Frederick S. Rhine (argued), Jonathan A. Rothstein, Gessler, Hughes & Socol, Thomas G. Morrissey, Donald Ralph, Chicago, IL, for plaintiff–appellee, cross–appellant.

Connie R. Sprovieri–Barba (argued), Office of the State's Attorney of Cook County, Terry L. McDonald, Michael David Jacobs, Chicago, IL, for defendant–appellant, cross–appellee.

Before BAUER, ESCHBACH, and COFFEY, Circuit Judges.

BAUER, Circuit Judge.

On September 1, 1994, Darryl Simpson brought a civil rights action pursuant to 42 U.S.C. § 1983 against Cook County Sheriff Michael Sheahan. Simpson's complaint alleged that the Sheriff's method of releasing detainees caused Simpson to remain in the Cook County Jail thirteen hours after a state court judge ordered him released. Simpson sought $75,000 in damages as compensation for the violation of his constitutional rights. A jury awarded Simpson $140, the equivalent of one day's missed wages. After trial, Simpson petitioned the court for $70,538.68 in attorney's fees and costs, pursuant to 42 U.S.C. § 1988. In an order dated January

26, 1996, the district court[1] awarded Simpson $20,000 in fees and $3,252.53 in costs.

On appeal, both parties challenge the reasonableness of the $20,000 attorney's fee award. Not surprisingly, Sheriff Sheahan claims the award is excessive, while Simpson argues that it is inadequate. We review the district court's application of the law and its determination of the appropriateness of a fee award for abuse of discretion. *Briggs v. Marshall*, 93 F.3d 355, 361 (7th Cir.1996) (citation omitted).

The legal principles that govern attorney's fee awards in civil rights cases are well-established. Title 42 U.S.C. § 1988 provides in relevant part: "In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." This language indicates that there are two elements to a fee award under this section. First, the party seeking fees must qualify as a "prevailing party." Second, the fee must be "reasonable." ·

"[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). A judgment for damages in any amount, whether compensatory or nominal, confers prevailing-party status on a plaintiff. *Id.* at 113, 113 S.Ct. at 574.

Once the party seeking fees has shown that he has prevailed in the underlying civil rights litigation, he is entitled to collect a reasonable attorney's fee. Generally, courts arrive at a reasonable fee by first calculating a lodestar—multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The court

then adjusts the lodestar upward or downward to account for the particularities of the suit, including the most important factor of the plaintiff's success. *Id.* at 434, 440, 103 S.Ct. at 1939–40, 1943. Limited success warrants "only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440, 103 S.Ct. at 1943.

A court may "lawfully award low fees or no fees" *without* figuring a lodestar, depending upon the amount and nature of the damages awarded. *Farrar*, 506 U.S. at 115, 113 S.Ct. at 575. In cases which result in a nominal damage award or a damage award that is minimal in relation to the amount of damages sought, this circuit employs the three-part test from Justice O'Connor's concurrence in *Farrar* to determine whether a prevailing party achieved enough success in the underlying suit to be entitled to an award of attorney's fees. *See Briggs*, 93 F.3d at 361 (citing *Johnson v. Lafayette Fire Fighters Ass'n Loc. 472*, 51 F.3d 726, 731 (7th Cir.1995)); *see also TCI of Illinois, Inc. v. Carpenter*, 849 F.Supp. 326, 327–28 (N.D.Ill.1994) (applying the *Farrar* analysis instead of calculating a lodestar where the plaintiff recovered $420 in damages after seeking $100,000 in a suit for the unlawful exhibition of a cable-televised boxing match). The "relevant indicia of success" in such cases are: (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation. *Farrar*, 506 U.S. at 122, 113 S.Ct. at 578–79; *Briggs*, 93 F.3d at 361. The first factor bears the most weight, whereas the second factor bears the least. *Briggs*, 93 F.3d at 361 (citation omitted).

We now turn to the district court's Memorandum Opinion and Order to see how the district court applied these principles. The district court initially determined that Simpson was a prevailing party under § 1988, observing that Simpson had proven some actual compensable injury. The dis-

---

1. The Memorandum Opinion and Order relating to attorney's fees was authored by District Court Magistrate Judge Martin C. Ashman, whom we refer to as the district court throughout this opinion.

trict court then embarked on "a non-lodestar, *Farrar*-type of analysis." Applying the first *Farrar* factor, the court found that "a comparison of the damages obtained and the damages sought favor[ed] reduction of Simpson's requested fees. Simpson recovered only $140 after seeking $75,000." Next, the district court found that the second factor, the legal import of the plaintiff's constitutional claim, favored Simpson. The court explained, "There are not many more significant issues than that concerning detention of an arrestee after a court-ordered discharge." However, the district court also noted that "this factor has been considered the least significant of the three factors, and 'only minimally advances plaintiff's claim to fees.'" (quoting *Maul v. Constan,* 23 F.3d 143, 146 (7th Cir.1994)). Finally, the court found that the third factor, the impact of the verdict in terms of vindication of rights and deterrence of future violations, favored a reduction in the fees sought by Simpson. The court adjudged the public purpose served by the verdict to be negligible, as it represented a victory for Simpson personally and not for the public at large. The district court concluded that Simpson achieved limited success in his underlying civil rights suit and deserved a "low" attorney's fee award.

■ Up to this point, the district court properly applied the three-part test from *Farrar.* However, the district court regrettably did not stop here. In the final paragraph of its *Farrar* analysis, the district court inappropriately transformed what looked like a reasonable award of attorney's fees in favor of Simpson into a sanction against Cook County.[2] The court stated:

The above evaluation of this suit and its verdict demonstrates the limited success actually achieved. For this reason, the Court finds that a low fee award is proper rather than a mechanical application of the lodestar approach. *See TCI of Illinois,* 849 F.Supp. at 328. However, unlike the "modest circumstances" of the defendant in *TCI of Illinois,* the Defendant here is Cook County and a *meaningful sanction* requires more than the trebling of damages awarded in *TCI of Illinois.* For this reason, the Court now awards Simpson the sum of $20,000 as reasonable attorney's fees. This sum, while only partially reimbursing Simpson for his fees and costs, impacts Defendant in a substantial way—a way that prevents Defendant from believing that unconstitutional activity is economically advantageous. (emphasis added).[3]

Simpson urges that the district court's remark is "at worst harmless error." Denominating an award of attorney's fees a "sanction" is *not* harmless error; it is an abuse of the district court's discretion.

■ The purpose of awarding attorney's fees in § 1983 suits is "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Riverside v. Rivera,* 477 U.S. 561, 578, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986) (quoting *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir.1982)). "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims

2. We briefly respond to Sheriff Sheahan's contention that the district court erred in referring to Cook County as the defendant in this case. This lawsuit went forward against Sheriff Sheahan in his official capacity. A suit against an individual acting in his official capacity is effectively a suit against "the polity for which he is an official." *Ruehman v. Sheahan,* 34 F.3d 525, 528 (7th Cir.1994). In this case, the polity is Cook County, which the district court correctly recognized.

3. In *TCI of Illinois, Inc. v. Carpenter,* 849 F.Supp. 326 (N.D.Ill.1994), which was not a civil rights suit, the district court awarded the plaintiff attorney's fees in an amount three times the $420

damages award. Using a *Farrar* type of analysis, the court determined that the case warranted an award of "low fees." *Id.* at 328. However, the court went on to state: "Although any specific figure to represent such 'low fees' may be open to debate because it necessarily partakes of some subjective evaluation, what appears appropriate is a trebling of the damages award—*meaningful as a sanction* in light of Carpenter's modest circumstances without being punitive." *Id.* (emphasis added). To the extent that *TCI of Illinois* suggests that it is appropriate to use an award of attorney's fees as a sanction against a defendant, the opinion is an incorrect statement of law. The above-quoted language evinces a misunderstanding of the purpose behind § 1988.

of civil rights violations with effective access to the judicial process. These victims ordinarily cannot afford to purchase legal services at the rates set by the private market." *Id.* at 576, 106 S.Ct. at 2695 (citations omitted). The statute thus provides for a *reasonable* fee. "This means a fee large enough to induce competent counsel to handle the plaintiff's case, but no larger." *Lenard v. Argento,* 808 F.2d 1242, 1247 (7th Cir.1987) (citations omitted). Section 1988 is not intended to provide windfalls to attorneys. *Rivera,* 477 U.S. at 580, 106 S.Ct. at 2697.

In light of Congress' purpose in enacting § 1988, it is clear that an award of attorney's fees is not intended to punish defendants. The penalty the defendant is obligated to pay is the damages award that results from litigating the underlying claim. The defendant's perceived ability to pay an attorney's fee award is not relevant to the determination of a reasonable fee. Nor is the court's disapproval of the defendant's behavior. At oral argument, Simpson was unable to produce, and we are likewise unable to unearth, a single decision by a court of appellate jurisdiction which permits a court to use an award of attorney's fees to sanction a defendant for its illegal conduct. In essence, the district court used attorney's fees in this case as an alternative to, or substitute for, punitive damages (which were not available). The district court cannot do indirectly what it is prohibited from doing directly.

What amount *is* reasonable in the present case? We leave that determination to the district court on remand. The district court should bear in mind, however, that it has already set the predicate for a *low* fee award through its *Farrar* analysis. Although we recognize that, relatively speaking, $20,000 may be a low fee in some cases, we simply note that *in this case* a low fee is necessarily less than $20,000. The district court arrived at $20,000 by arbitrarily adding an amount (and we presume a significant amount) to whatever sum the *Farrar* analysis yielded, in order to create a "meaningful sanction." The district court indicated that it somehow wanted to "impact[ ] Defendant in a substantial way—a way that prevents Defendant

from believing that unconstitutional activity is economically advantageous." The third part of the *Farrar* analysis already takes into account the vindication of rights and deterrence of future violations, and the district court specifically found that this factor favored a reduction in fees. The court was explicit in its reasoning:

> Simpson overstates the importance of this verdict. In awarding the $140 compensatory damages, the jury necessarily had to have found that Defendant's policy of discharging detainees was unconstitutional in this case. Yet, such a determination, putting Defendant on notice that its policy can result in unconstitutionally long detention in some circumstances, does not cloak the policy as a whole in unconstitutionality. In other words, even after this verdict, the successful civil rights plaintiff seeking damages for a lengthy post-dismissal detention in the Cook County Jail must still prove that, as applied to him, the policy is unconstitutional. The unconstitutional application is fact intensive; it cannot be said to be unconstitutional in every case.

We reiterate that the $140 jury award in this case reflected a victory for Simpson himself, not for all of society. The district court should have held itself to its own *Farrar* analysis.

In conclusion, we find that the district court's award of $20,000 in fees was punitive in nature and an abuse of discretion. The parties' other arguments are without merit and we do not discuss them. We vacate the fee award and remand to the district court to recalculate the award in accordance with the principles laid down in this opinion.

VACATED AND REMANDED.