**CONCORD BOAT CORPORATION, et al., Plaintiffs,**

v.

**BRUNSWICK CORPORATION, Defendant.**

**No. LR–C–95–781.**

United States District Court,
E.D. Arkansas,
Western Division.

Dec. 14, 1998.

K. Craig Wildfang, Brooks F. Poley, Christopher W. Madel, Steven E. Uhr, Laura A. Pfeiffer, Winthrop & Weinstine, P.A., Minneapolis, MN, Jerry C. Jones, Amy Lee Stewart, Rose Law Firm, Little Rock, AR, for Plaintiffs.

Robert F. Finke, Mark McLaughlin, Andrew S. Marovitz, Mayer, Brown & Platt, Chicago, IL, William H. Sutton, James M. Simpson, Friday, Eldredge & Clark, Little Rock, AR, for Defendant.

## ORDER

MOODY, District Judge.

Presently before the Court are Plaintiffs' motion and supplemental motion for attorneys' fees and costs and Brunswick's motion and supplemental motion for attorneys' fees and costs.

## I. Plaintiff's Claims

Plaintiffs filed this lawsuit on December 7, 1995, alleging a number of antitrust and state law claims against Defendant Brunswick Corporation. In particular, Plaintiffs alleged antitrust violations of Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act with respect to four separate product markets: stern drive engines, outboard engines, stern drive boats and outboard boats. Plaintiffs also alleged three common law claims for fraud, breach of contract, and breach of the covenant of good faith and fair dealing.

The rulings on pre-trial motions limited the issues that were ultimately tried to the jury. First, the Court granted summary judgment with respect to Plaintiffs' claim for attempted monopolization of the outboard boat market. The Court also granted in part Brunswick's motion for summary judgment on Plaintiffs' damage claim with respect to the outboard engine market. Finally, the Court granted Brunswick's motion for summary judgment on Plaintiffs' common law claims. Thus, the only claims Plaintiffs presented to the jury were the three antitrust claims involving the stern drive and inboard marine engine product market.

The trial commenced on April 13, 1998. On June 19, 1998, the jury returned a verdict in favor of Plaintiffs on all three of their antitrust claims with respect to the market for stern drive and inboard marine engines and awarded Plaintiffs a total of $44,371,761 in damages. On September 14, 1998, the Court trebled the jury's damage award to $133,115,283. Plaintiffs' post-trial requests for equitable relief were denied in their entirety. Following the trial, Plaintiffs voluntarily dismissed their remaining claims for equitable relief with respect to the outboard engine and stern drive boat markets.

Plaintiffs' motion for attorney's fees and costs seeks an award of $14,036,342.60.

## II. Discussion

### A. Reasonable Fee Award

■ Plaintiffs bear the burden of demonstrating a reasonable fee award, which is most often accomplished by calculating a "lodestar." *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). To calculate the lodestar, the Court must determine the reasonable amount of hours expended on the litigation and the reasonable hourly rates of the attorneys participating in the litigation. *Id.* These figures are then multiplied together to produce a fee amount which may be adjusted upward or downward at the discretion of the Court. *Id.*

Plaintiffs have offered detailed affidavits in support of their motion. These affidavits set forth the applicable billing rate for each attorney and paralegal participating in the litigation and the total hours expended by those individuals. Plaintiffs have also submitted their detailed billing records *in camera.* Plaintiffs seek $9,197,282.90 in fees for attorneys and other support personnel from Winthrop & Weinstine and $1,854,507.75 in fees

for attorneys and other support personnel from the Rose Law Firm.

 Plaintiffs are entitled to a substantial fee. They are prevailing parties in a case which by anyone's standards was extremely complex and immensely time consuming. Magistrate Judge Jerry W. Cavaneau presided over what was arguably the most extensive pre-trial phase in the history of litigation in the Eastern District of Arkansas.[1] Brunswick produced over two million pages of material to Plaintiffs. Plaintiffs deposed 101 individuals and also defended 93 depositions noticed by Brunswick. The trial of this matter spanned ten weeks. The docket in this matter currently reflects 1,350 individual entries, an amount unprecedented in single-defendant litigation and a testament to the relative complexity of this case.

In the end, Plaintiffs achieved results which can only be described as exceptional. Plaintiffs now have a judgment in their favor for $133,115,283. In addition, Brunswick has voluntarily ceased a substantial portion of the conduct which constituted the core of Plaintiffs' allegations in this case. But regardless of how deserving Plaintiffs are of a generous fee award, the Court must scrutinize Plaintiffs' fee application to determine an award that is reasonable and just under the circumstances and that does not compensate Plaintiffs in a manner inconsistent with the goals of the fee-shifting statute. Brunswick has identified many aspects of Plaintiffs' fee petition which Brunswick claims are overreaching. Brunswick asks the Court to "trim" Plaintiffs' fee award by $6,683,920.36 to the sum of $4,279,700.29.

The Court will address each of Brunswick's arguments for reduction below.

## 1. Reasonable Hourly Rate

The Poley Affidavit and the Jones Affidavit reflect two key issues regarding the hourly rates requested by Plaintiffs. First, Plaintiffs seek to have their Minneapolis counsel compensated at Minneapolis rates. While such a request seems contrary to the general proposition that hourly rates are determined from the community in which the lawsuit was

tried, Brunswick notes that the *normal* billing rates of Winthrop & Weinstine in Minneapolis roughly correspond to the *normal* billing rates of the Rose Law Firm in Little Rock. Thus, Brunswick concedes that an acceptable hourly rate for the lodestar can be calculated from the normal billing rates of Plaintiffs' attorneys, regardless of their locale.

 Perhaps the more significant issue is that Plaintiffs seek to recover an hourly rate that reflects an "enhancement" to their normal billing rates. The amount of the rate enhancement varies among Plaintiffs' attorney's in a range from $20 to $140 over the normal billing rates. Plaintiffs argue that the increased hourly rates are not properly viewed as enhancements because they are *prima facie* reasonable. In support of their argument, Plaintiffs point out that their requested rates are equal to or less than the rates paid by Brunswick to its own lawyers in this litigation. Plaintiffs argue that "the quality of their representation in this case at least meets that of their adversaries." Plaintiffs' Mem. at 24. Plaintiffs also cite *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), where the Court stated that "in some cases of exceptional success an enhanced award may be justified." *Id.* at 435, 103 S.Ct. 1933.

The Supreme Court considered the issue of attorney's fee "enhancements" in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In that case, the Court specifically rejected the petitioner's argument that an "upward adjustment" to an attorney's fee award under 42 U.S.C. § 1988 is never permissible. *Id.* at 897, 104 S.Ct. 1541. However, the Court reversed the district court's award of an enhanced fee. The Court held that "superior quality" could justify an enhanced fee award "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Id.* at 899, 104 S.Ct. 1541.

---

1. Prior to trial, Magistrate Judge Cavaneau held 48 hearings and telephone conferences on discovery matters.

After careful consideration of this issue, the Court finds that Plaintiffs are not entitled to an enhanced rate higher than their normal billing rates. The law requires that the Court set a reasonable hourly rate according to the prevailing market rate in Little Rock, Arkansas. Plaintiffs retained skilled and reputable counsel from Little Rock that actively participated in the prosecution of their claims from start to finish. Thus, Plaintiffs were in no way disadvantaged in their choice of counsel due to their forum selection. Furthermore, the circumstances do not justify an enhanced hourly rate. Although the results Plaintiffs achieved were certainly exceptional, there has been no showing that the quality of service was *superior* to that one would have *reasonably* expected. Plaintiffs hired quality lawyers and received quality service. Accordingly, the normal billing rates for those lawyers shall apply.

### 2. Reasonable Hours

 Plaintiffs' fee application requests compensation for each hour worked on this case—approximately 70,000 hours. Brunswick argues that the fee request must be reduced by 40% for time devoted to claims upon which Plaintiffs did not prevail.

Clearly, Plaintiffs did not prevail on every claim in this lawsuit. Plaintiffs were unsuccessful in the pursuit of their antitrust claims with respect to the outboard engine, outboard boat and stern drive boat markets. Plaintiffs also did not prevail on their common law claims or their claims for equitable relief. And finally, Plaintiffs did not prevail on Brunswick's antitrust counterclaim.

In light of the above, it is apparent that some reduction will be necessary. However, in making a reduction the Court must be guided by the Supreme Court's admonitions:

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Although Plaintiffs did not prevail on several of their antitrust claims, those claims possessed numerous common facts and legal theories with Plaintiffs' stern drive and inboard engine market claims. Brunswick placed product market definition at issue, thereby necessitating a great deal of discovery with respect to all of Plaintiffs' alleged product markets. Brunswick also utilized many similar programs in each of the separate markets. Of course, there were allegations that were specific to each product market, but Plaintiffs' fee should not be drastically reduced "simply because [they] failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. The Court cannot heed Brunswick's suggestion to view every claim in isolation with no consideration for the case as a whole. Nor can the Court merely inventory the unsuccessful claims and apply a mechanical reduction. While the Court believes some reduction is necessary in relation to these claims, the reduction shall be far less than the 40% requested by Brunswick.

Reductions are also necessary with respect to Plaintiffs' common law claims, Plaintiffs' claims for equitable relief, and Brunswick's counterclaim. These claims are not completely interrelated with Plaintiffs' stern drive and inboard engine market antitrust claims, and Plaintiffs cannot recover fees for the entirety of the time devoted to prosecuting and defending them. However, there is some overlap between these claims and the claims upon which Plaintiffs prevailed.

The Court has carefully the considered the claims upon which Plaintiffs did not prevail and the relationship of those claims to the case as a whole. The Court finds that a reduction in the amount of 15% is reasonable under the circumstances and will fully account for time spent on unrelated and unsuccessful claims. As will be demonstrated below, this reduction amounts to approximately $1,370,000.

### 3. Document Coding

Plaintiffs' fee application includes a request for fees for document "coders"—attorneys and paralegals that were hired by Plaintiffs to electronically "code" or "index" the thousands of business records produced by Brunswick into a computerized document recovery system. Plaintiffs do not seek compensation for the cost of the actual document recovery system. They only seek compensation for the time spent by coders reviewing the documents and organizing the data that was input into the system. Brunswick argues that these fees are not recoverable because the work coding the documents does not represent "legal work" that might otherwise be performed by an attorney. According to Brunswick the work performed was ministerial in nature.

The Court has reviewed the White Affidavit, which describes the work involved in constructing Plaintiffs' computerized document recovery system. According to the affidavit, 90% of the coding team were attorneys with prior experience in the review, analysis and coding of documents. White Aff., ¶ 13. While the coding process did involve some degree of data entry, the process also required considerable use of subjective legal judgment. The coders were required to identify issues in documents relevant to the facts of this case, and also were required to prioritize the documents based upon the coder's assessment of the documents' significance. Given the complexity of the legal issues at hand, this was certainly no small task. The Court had the opportunity to review hundreds of these documents and can readily attest that the relative significance of a document was not always apparent from its face.

The Court has some difficulty seeing how this coding process is any different than any other type of document review by an attorney. Certainly, if Plaintiffs' lead counsel reviewed a million pages of material by hand, that review and its output (in the form of his notes or dictation) would be compensable in attorney's fees. The result should not be any different if a group largely consisting of attorneys does the same thing. The fact that their output is ultimately converted into an electronic database does not diminish the fact that they are performing legal analysis that constitutes legal work.

The Court's opinion is not changed by the fact that the coding team consisted in part of outside personnel that were hired by Plaintiffs specifically for the coding project. Nor is the Court's opinion changed by the fact that outside consultants are often used for coding projects. These facts are not relevant to whether the time spent on this particular coding project is compensable.

The Court will award Plaintiffs their reasonable attorney's fees for the coders.

### 4. Duplicative Effort

Brunswick also requests a 10% across the board reduction in fees due to duplication of effort by Plaintiffs' attorneys. Brunswick's only specific complaint is that Plaintiffs had more than one attorney in attendance at certain depositions. Brunswick then makes general allegations regarding the number of attorneys and paralegals that worked on the case and the inevitable duplication and waste that must have resulted.

When Brunswick's specific allegations are tested against its own actions, there fails to exist a justifiable reason for reducing Plaintiffs' fee award. First, Brunswick complains about the appearance of multiple attorneys at some depositions, in spite of the fact that Brunswick also engaged in that same practice. Given the nature of this case, the appearance of multiple attorneys at key depositions and hearings was reasonable and necessary. Second, Brunswick's complaints about the number of attorneys that worked on this case are not persuasive when compared to the staffing decisions undertaken by Brunswick. Brunswick utilized 125 attorneys and paralegals throughout this case while Plaintiffs utilized 67 attorneys and

paralegals. Brunswick utilized multiple attorneys at hearings, depositions and during the trial, as did Plaintiffs.

In sum, Brunswick wants the Court to reduce Plaintiffs' fee award by $700,000 because Plaintiffs chose to staff this case at a level equal to or less than their adversary. Of course, direct numerical comparisons do not automatically decide the question. The key issue here is whether Plaintiffs' staffing decisions were reasonable under the circumstances. The Court has reviewed Plaintiffs' *in camera* billing records, and based upon the complexity of this case, the obvious necessity for substantial manpower and the actions of Brunswick itself, the Court cannot say that Plaintiffs engaged in unreasonable or unnecessary duplicative effort.

### B. Reasonable Costs

Plaintiffs have set forth detailed information regarding their requested costs. In total Plaintiffs ask for $2,965,044.32 in costs. Brunswick alleges that reductions are necessary with respect to several specific areas.

### 1. Unsuccessful Claims

As described above, a reduction of fees and costs is necessary due to the fact that Plaintiffs did not prevail on all of their claims. With respect to requested costs, the Court shall apply the same 15% reduction to the following items: (1) Deposition Expenses; (2) Document Retrieval; and (3) Meeting Expenses.

### 2. Travel–Related Expenses

Brunswick requests a reduction for travel-related expenses incurred solely because of Plaintiffs' decisions to employ a Minneapolis, Minnesota law firm and to file this lawsuit in Little Rock, Arkansas. Brunswick is correct that such expenses are not recoverable by Plaintiffs. The Court will eliminate from Plaintiffs' award the following items: (1) hearing expenses due to travel from Minneapolis to Little Rock, and (2) trial expenses due to travel from Minneapolis to Little Rock.

### 3. Expert Witness Fees

Plaintiffs have requested approximately $1.25 Million in expert witness fees for their testifying expert, Dr. Robert Hall,

and several non-testifying experts and consultants. These requested fees are not recoverable. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *Wedemeier v. City of Ballwin*, 931 F.2d 24 (8th Cir.1991); *Pinkham v. Camex, Inc.*, 84 F.3d 292 (8th Cir.1996).

Plaintiffs have also requested expert witness fees under Fed.R.Civ.P. 26(b). Clearly, the only entitlement to a fee would arise under Rule 26(b)(4)(C). However, as Brunswick correctly notes, this provision applies equally to all parties, regardless of their success. The Court will allow Plaintiffs to withdraw their requests pursuant to Rule 26(b)(4)(C). Under 28 U.S.C. § 1821, the Court will award Plaintiffs $11,280.17 for Dr. Hall's trial testimony.

### 4. Computer–Aided Research

Plaintiffs have requested payment of $76,106.48 for the cost of computer-aided legal research. Plaintiffs argue that this expense should be recoverable as a component of a "reasonable attorney's fee" for "reasonable out-of-pocket expenses." *West Virginia Univ. Hosp*, 499 U.S. at 87 n. 3, 111 S.Ct. 1138. As the law currently stands in the Eighth Circuit, the expense of computer-aided research must be incorporated into the attorney's hourly rates. *Standley v. Chilhowee R–IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir.1993). The Court will follow Eighth Circuit precedent with respect to this issue and decline to award Plaintiffs these claimed expenses.

### 5. Other Charges

Plaintiffs have requested $443,873.17 in photocopying expenses. Plaintiffs have not provided detailed back-up for these claimed charges, and the Court agrees that these charges must reflect some copies made solely for Plaintiffs' convenience. The Court will apply a 15% reduction for convenience copies, and will reduce the resulting figure by 15% to account for unsuccessful claims. The Court will also eliminate from Plaintiffs' award expenditures identified in Brunswick's

response as Office Supplies, Shelving and Other Miscellaneous · Costs. Brunswick Mem. p. 43–45.

### C. Supplemental Motion

 Plaintiffs have also filed a supplemental motion for fees and costs. This motion only addresses fees and costs incurred with respect to their motion for attorneys' fees and costs. The Court will award Plaintiffs their fees requested in this motion at their normal hourly rate.[2] The Court will not apply a percentage reduction to these fees because they do not encompass work performed on unsuccessful claims.

With respect to the costs, the Court will award Plaintiffs their requested costs in accordance with the rulings set forth above. The Court will not allow costs due to computer-aided research or costs incurred in the development of Plaintiffs' costs/fees database.

III. Plaintiffs' Fee Award
- A. Initial Fee Request
 1. Winthrop & Weinstine $ 9,121,639.15
 2. Rose Law Firm $ 1,841,981.50

 TOTAL $10,963,620.65
- B. Reduction to Normal Hourly Rates
 1. Winthrop & Weinstine $ 1,725,165.50
 2. Rose Law Firm $ 160,683.75

 TOTAL $ 1,885,849.25

 NET $ 9,077,771.40
- C. Reduction for Unsuccessful Claims and Counterclaim (Total X 0.15) $ 1,361,665.71

 NET $ 7,716,105.69
- D. Supplemental Request (Normal Rates) (No Percentage Reduction)
 1. Winthrop & Weinstine $ 55,730.75
 2. Rose Law Firm $ 11,387.50

 TOTAL $ 67,118.25

 TOTAL FEE AWARD $ 7,783,223.94

IV. Plaintiff's Costs
- A. Initial Request
 1. Winthrop & Weinstine $ 2,794,860.70
 2. Rose Law Firm $ 170,183.62

 TOTAL $ 2,965,044.32
- B. Reduce Deposition Expenses 15% for Unsuccessful Claims
 Claim $ 431,135.31
 Reduction $ 64,670.30

 NET $ 366,465.01

- C. Reduce Document Retrieval Expenses 15% for Unsuccessful Claims
 Claim $ 24,429.43
 Reduction $ 3,664.41

 NET $ 20,765.02
- D. Exclude From Hearing Expenses Minneapolis to Little Rock Travel
 Claim $ 47,255.92
 Reduction $ 43,269.93

 NET $ 3,985.99
- E. Reduce Meeting Expenses 15% for Unsuccessful Claims
 Claim $ 5,969.45
 Reduction $ 6,895.42

 NET $ 39,074.03
- F. Exclude Trial Expenses due to Minneapolis to Little Rock Travel
 Claim $ ·289,977.45
 Reduction $ 143,617.62

 NET $ 146,359.83
- G. Reduce Expert Fees Claim, Subject to Dr. Hall's Trial Fees and Expenses
 Claim $ 1,251,001.79
 Reduction $ 1,239,721.62

 NET $ 11,280.17
- H. Exclude Cost of Computer-Aided Research
 Claim $ 76,106.48
 Reduction $ 76,106.48

 NET $ 0.00
- I. Exclude Photocopying Expenses to Account for Convenience Copies and Unsuccessful Claims (x .15)(x .15)
 Claim $ 443,873.17
 Reduction $ 123,174.81

 NET $ 320,698.36
- J. Exclude Office Supplies, Shelving and Other Miscellaneous Items
 Claim $ 170,183.62
 Reduction $ 5,226.30

 NET $ 164,957.32
- K. Total Exclusions and Reductions $ 1,706,346.89

 NET $ 1,258,697.43
- L. Maximum Allowable Costs from Supplemental Motion $ 8,726.75

 TOTAL COSTS $ 1,267,424.18

### V. Brunswick's Claims

Shortly after the filing of the Complaint in this case, Brunswick filed a Counterclaim against the Plaintiffs who purchased stern drive engines (the "Stern Drive Plaintiffs")

---

**2.** The Court will award fees for work performed by the Rose Law Firm at the normal rate set forth in Plaintiffs' October 12 motion.

alleging an antitrust conspiracy in violation of Section 1 of the Sherman Act. The Counterclaim was based upon allegations that the Stern Drive Plaintiffs engaged in an unlawful boycott of MerCruiser stern drive engines and conspired to price MerCruiser stern drive engines at a disadvantage to Brunswick's competitors. Brunswick presented its Counterclaim to the jury. At the close of Brunswick's case-in-chief, Brunswick moved to voluntarily dismiss 13 of the Stern Drive Plaintiffs from the Counterclaim. The Court granted Brunswick's motion, and allowed the counterclaim to proceed to the jury against Plaintiff Independent Boat Builders, Inc. ("IBBI") and five other Plaintiffs that were represented on the IBBI Board of Directors (collectively the "Six Remaining Plaintiffs"). The jury returned a verdict in favor of the Six Remaining Plaintiffs.

On September 4, 1998, the Court granted Brunswick's motion for judgment as a matter of law with respect to the liability of the Six Remaining Plaintiffs. However, the Court granted the Six Remaining Plaintiffs' motion for judgment as a matter of law with respect to the issue of damages. The Court found that Brunswick had presented a flawed damage model that could not support an award of damages in Brunswick's favor. The Court thus awarded Brunswick nominal damages in the amount of $1.00 which was subsequently trebled to $3.00.

Brunswick has requested an award of $215,928.87 in fees and $1,291.76 in costs.

## VI. Discussion

Although Section 4 of the Clayton Act provides for a mandatory award of attorney's fees and costs, the Court has considerable discretion in determining the reasonableness of the *amount* of the award. In *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Supreme Court stated that " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Id.* at 114, 113 S.Ct. 566 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The Court went on to state that "when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* at 115, 113 S.Ct. 566. While *Farrar* does not completely foreclose an attorney's fee award in a nominal damages case, the Eighth Circuit requires district courts to analyze the three factors set forth by Justice O'Connor in her *Farrar* concurrence "to determine if the plaintiff's victory is merely 'technical' or 'pyrrhic.' " *Piper v. Oliver,* 69 F.3d 875 (8th Cir.1995). The three factors used to determine the nature of the plaintiff's victory are: 1) the difference between the amount of damages recovered and the amount sought; 2) the significance of the legal issue; and 3) the public goal or purpose that the litigation served. *Id.* at 120–122, 113 S.Ct. 566.

Applying these three factors to the present case compels the conclusion that Brunswick is not entitled to a fee award for its Section 1 Counterclaim. With respect to the first factor, Brunswick's Counterclaim sought approximately $14.6 Million in damages in its original form. A significant portion of these damages was attributable to Brunswick's allegation that the filing of this lawsuit was an act in furtherance of the conspiracy, and that Brunswick was entitled to damages for its attorney's fees expended in defense of the litigation. At trial, Brunswick did not ask the jury to award those damages. However, the Court agrees with Plaintiffs that the Court must consider Brunswick's dismissed claims and abandoned damage theories in assessing the reasonableness of Brunswick's requested fee award. Given the fact that Brunswick only obtained three dollars in damages, this factor strongly militates against an award of attorneys' fees in connection with the Counterclaim.

The second factor is the significance of the legal issue. This factor has been described as the least important of the three factors. *Simpson v. Sheahan,* 104 F.3d 998, 1002 (7th Cir.1997). While this factor slightly favors Brunswick, the policy underlying Section 1 of the Sherman Act is certainly no more significant than the rights guaranteed by the United States Constitution. Many Courts have awarded no attorney's fees in spite of demonstrated constitutional violations.

The third factor involves the public goal or purpose that the litigation served. With re-

spect to this issue, the Court notes that it had the opportunity to observe Brunswick's Counterclaim from start to finish. The Court viewed every exhibit introduced to support the counterclaim, and heard the testimony of every witness who testified about the counterclaim. And notwithstanding the Court's opinion that Brunswick met certain evidentiary burdens, the Court is convinced that the pursuit of this Counterclaim served no public goal or purpose.

This analysis of the three factors heavily favors an award of no fees or costs.[3] As the majority stated in *Farrar*, the "most critical factor" is the "degree of success obtained." *Farrar*, 506 U.S. at 114, 113 S.Ct. 566. In this case, Brunswick obtained three dollars in damages on a claim that originally sought over $14 Million. The damage study presented by Brunswick was patently deficient and was incapable of supporting any damage award in Brunswick's favor. Thus, Brunswick recovered only nominal damages due to its "failure to prove an essential element of its claim for relief." *Farrar*, 506 U.S. at 115, 113 S.Ct. 566. Furthermore, it makes no difference that the Court has already held that Brunswick demonstrated injury-in-fact. While meeting that hurdle certainly vested Brunswick with prevailing party status and entitled Brunswick to move for attorneys' fees, it did not foreclose the potential for a *Farrar* analysis. The Court is still vested with substantial discretion in determining a reasonable attorneys' fee in light of the degree of success obtained. As stated by the Supreme Court in *Farrar*, this Court's "central responsibility" is to "make the assessment of what is a reasonable fee under the circumstances of [this] case." *Farrar*, 506 U.S. at 115, 113 S.Ct. 566 (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)). When a litigant such as Brunswick is seeking the recovery of money damages, the "primary consideration" in determining a fee award is "the amount of damages awarded as compared to the amount sought," *Farrar*, 506 U.S. at 114, 113 S.Ct. 566, and as described above, the disparity between these two figures is striking. By any calculation, Brunswick's victory was *de minimis*, and it was a victory that does not justify an award of attorneys' fees.

## VII. Conclusion

In accordance with the above, Plaintiffs' Motion and Supplemental Motion for Attorneys' Fees and Costs (Docket #'s 1289 & 1345) are hereby GRANTED. Brunswick's Motion and Supplemental Motion for Attorneys' Fees and Costs in Connection with its Antitrust Counterclaim (Docket #'s 1284 & 1340) are hereby GRANTED. The Court will enter a judgment awarding Plaintiffs their attorneys' fees and costs as set forth in this Order and awarding Brunswick attorneys' fees and costs of $0.00.

### *JUDGMENT*

By Order dated December 14, 1998, the Court granted Plaintiffs' Motion and Supplemental Motion for Attorneys' Fees and Costs. The Court also granted Brunswick's Motion and Supplemental Motion for Attorneys' Fees and Costs.

Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15 (1998), the Court hereby awards Plaintiffs Albemarle Boats, Inc., Armada Manufacturing, Caravelle Boats, Inc., Campion Marine, Inc., Century Craft Industries (Vanguard Industries), Concord Boat Corp., F.R.P. Industries, G.W. Invader, Galaxie Boatworks, Harris Kayot, KCS International, Malibu Boats, Mariah Boats, Inc., Mirage Boats, Inc., Ohio Marine Dist. (Play Time), Powerquest Boats, Inc., Sea Arrow Marine, Inc., Silverton Marine Corp., Thompson Boat Co., and Weeres Industries, collectively, $7,783,223.94 in attorneys' fees and $1,267,424.18 in costs.

Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15 (1998), the Court hereby awards Brunswick attorneys' fees and costs in the amount of $0.00.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Judgment is hereby entered for Plaintiffs in the amount reflected above, together with interest thereon from this date forward at the rate of 4.616% per annum as provided by law. Any execution upon the Judgment or proceedings to enforce the Judgment (including any subsequently entered Judgment) is hereby stayed until thirty days after the Judgment is no longer

---

**3.** By the same token, Brunswick is not entitled to its claim for costs in the amount of $1,291.76.

subject to further review by any Court, including the Supreme Court of the United States.